## STATE *v.* SMITH.

In prosecutions instituted in the mame of the state, a general discretionary power, exists in the prosecuting officer, to enter a *nolle prosequi.* Before a jury is empanneled, or, after a verdict, in favor of the state, this power may be exercised, without the respondent's consent, and with his consent, at any time during the trial, and before the verdict of the jury.

In a penal statute, where one half of the fine goes to the public prosecutor, and the other half to the state, and where the offence has been prosecuted at the expense of the state, it must appear of record to the court, who the complainant is, in order to entitle him to the penalty, otherwise the whole penalty goes to the state.

Such record may be in the form of a suitable allegation in the indictment, or the endorsement of complainant's name on the back of the same, so that the court may be informed, as to the person, entitled to receive his proportion of said fine.

Neither the prosecuting officer, nor the indictment, in which, the complainant has a pecuniary interest, is under the power of the complainant, but the prosecuting officer will have control, as in ordinary cases, and will exercise his judgment, and sound discretion, in the disposition of the same, guided by a strict regard to the public welfare.

FIVE indictments were found March term, 1869, against Willard Smith, three of them, for selling liquor, one for keeping liquor for sale, and one for being a common seller. At March term, 1869, res-

pondent pleaded "not guilty." At the September term, the solicit-
or, stated that he believed, that the respondent, had ceased the sale
of liquor, and that he had arranged with respondent's counsel, that,
if the respondent pleaded *nolo contendere* to all the indictments, the
state would, at this time, move for sentence, on only one indictment;
reserving the right to bring forward the other indictments and move
for sentence if the respondent should, in future, violate the liquor
law. Thereupon, Peter Sherman, moved for leave to appear, and
prosecute the indictments, alleging, that he was the complainant, and
entitled to half the fines, and, that respondent, has not ceased the
sale of liquor. Sherman, also moved that, if necessary, to entitle
him to appear, or, to receive half the fine, the indictments might be
so amended as to aver, that he was the complainant. The solicitor
and the respondent, both objected. ·

For the purpose of allowing the questions thus arising, to be re-
served, it was ruled *pro forma*, and subject to exception, that Sher-
man's motions, should be granted, if it should, hereafter, be made
to appear, by proper proof, that he was complainant.

Case reserved.

*Chapman*, for Sherman, the alleged complainant, in this case,
argued against the right of the solicitor, of the county, to enter a
*nolle prosequi* in this indictment, and contended that such proceeding
was prejudicial to the pecuniary interests of Sherman, contrary to
the provisions of the violated law, in this case, and was not in ac-
cordance with the exercise of duty, and, a sound and healthy discre-
tion on the part of the prosecuting officer; and quoted, General
Statutes, ch. 15; also, ch. 99, sec's 13, 14, 15, 16 and 21.

*D. R. Lang*, for respondent, as to the general rights, and du-
ties, of a prosecuting officer, referred the court to *Commonwealth* v.
*Tuck*, 20 Pick. 364; *Commonwealth* v. *Wheeler*, 2 Mass. 174;
*Commonwealth* v. *Briggs*, 7 Pick. 171; *Commonwealth* v. *Jenks*,
1 Gray 490; *State* v. *Breek*, 38 Maine 574; 1 Chitty Crim. Law,
479 and 845; *Rex* v. *Wilkins*, 4 Burrows 2527—2089; *King* v.
*Strattam*, 1 Doug. 239; *Jones* v. *Clay*, 1 B. & A. 191; *State* v.
*Doon*, 9 N. H. 471, and cases cited. Under the force of the latter
decision, the prosecution should have been, in the nature of a *qui
tam* proceeding; the informer running all risk of the grand jury's
finding a bill, &c., in order to entitle himself to half of the fine.

It is now, too late, after this has been done, at the expense of the
state, for him to come in, and, take the prosecution out of the solic-
itor's hands, for his own benefit. It is only in the prosecution, that
the informer institutes, and, carries on where he is entitled to half
of the fine, General Statutes, 210, sec. 21. Sherman simply made
the complaint, in one or more, of the cases, upon which, the in-
dictments were founded; all subsequent was done by the state's at-
torney, and, at the expense of the state, *Burley* v. *Burley*, 6 N. H.
200, and cases cited.

NESMITH, J.   No question is made, by the counsel on either side, as to the general discretionary power of the prosecuting officer, in this state, to enter a *nolle prosequi* in ordinary indictments, instituted in the name of the state.   This power, such officer, exercises *virtute officii*, frequently, before a jury is empanneled, and, sometimes, while the case is on trial, before the jury, ·with the consent of the respondent, and, sometimes, after a verdict is rendered against the prisoner.

It may be, that the prosecuting officer, finds his indictment defective in form, or substance, and, that he may wish to procure a better one, or, he may discover, that the evidence will not sustain the charge as alleged, and a change may be requisite to conform to the actual proof.   There may be, various reasons for discontinuing the prosecution, all which, he must determine, being controlled by well settled principles of law, and practice, and, a sound, legal discretion. It is not to be presumed, that this officer will, voluntarily, consent to any discontinuance, which will, materially, injure the rights of the prisoner, or, that he will violate, knowingly, his official trust, or, in any way, act corruptly, or, oppressively.

Generally, whether a jury shall be empanneled, or, not, depends upon the determination of the prosecuting officer ; but, when a jury is organized, and the trial commences, the respondent, then, acquires new rights, which, the court will protect.   It may, be regarded as the respondent's right, to have the jury pass upon the facts of his case, because, their verdict, becomes a bar to another indictment, for the same offence. and, a *nolle prosequi* will not thus operate for the prisoner's benefit, therefore, in this state of the proceedings, the prisoner, having a right to insist upon a verdict upon the whole evidence of the case, of course, there can be no discontinuance of the· prosecution except upon the prisoner's express consent.

These elementary principles are discussed in Aaron Burr's Trial, *seriatim* ; also, in *Commonwealth* v. *Tuck*, 20 Pick. 365, and other cases cited by respondent's counsel.   In the latter case, Chief Justice Shaw, claims the power to the attorney general, or other prosecuting officer, to enter a *nolle prosequi*, after verdict against the prisoner, and says, such a practice has prevailed for many years, and is found highly useful to the due administration of the criminal law. It may be ascertained, that the party convicted, may still be innocent.   It may become important, to use him as a witness, against more flagrant offenders.   The power to enter a *nolle prosequi* exists in the prosecuting officer.   He exerts it upon his official responsibility.   The court has no right to intefere in its exercise.   They can only judge, of the effect of the act, when done, or, of the legal consequences, which may follow from it.   The court will take care that it shall not ·operate to the prejudice of the respondent's rights. *Commonwealth* v. *F. O. J. Smith*, 98 Mass. 35 ; 1 Chitty's Crim. Law, 479 and 845.

The counsel for the prosecutor, Sherman, claims the right for his

client to intefere with the practice of the solicitor, in this particular case, and asked for leave of the court to be granted to him to appear and prosecute these indictments.     Under a fair construction of section 21 of chapter 99 of the General Statutes, we think, it was the clear intent of the legislature to give him, who might volunteer to prosecute for the violations of the law, embraced in this chapter, a bounty, or a reward, equal to one-half the fines, that should be collected, by means of such prosecutions.     As the statute in this case, prescribes no new mode of proceeding under it, in order to establish the right of the complainant to recover his bounty, it must be presumed, that he must obtain his remedy, according to the ordinary rules of practice, as known in our courts.     It, therefore, cannot be presumed that the complainant, can come into court, and oppose the predetermined action of the prosecuting officer, or, that he can set up his will, as superior to the fiat of the officer· Such a practice, would introduce confusion, into this department of the law.     An attempt of the kind indicated by the prosecutor's motion, was lately made in the court of the Queen's Bench, in England, and failed there, for the reasons suggested, by the justices of that court.     *Regina* v. *Allen,* 1 Best v. Smith, 101 (Eng. C. L. Reports,) *854.     The respondent, Allen, was indicted for perjury, at the prosecution of one Gregory, in the name of the Queen, for giving false evidence before a commission of the customs.     To the indictment, pending in the Queen's bench, in November, 1861, a *nolle prosequi* was entered by order of the attorney general.     In behalf of the prosecutor, (Gregory,) J. J. Powell, subsequently, moved upon affidavits, for a rule, calling upon the respondent to show cause why the prosecutor should not be at liberty, to proceed to the trial of the indictment, notwithstanding the *nolle prosequi*, he claiming that it had been entered irregularly ; therefore the indictment was still in force.

Powell claimed, that the attorney general had no power, without calling the prosecutor before him, and hearing the parties to make such an entry.     Chief Justice Cockburn said : " It is an undoubted power of the attorney general, as the representative of the crown in matters of criminal jurisdiction, to enter a *nolle prosequi* and thereby to stay proceedings in any indictment, or criminal proceeding. No instance has been found, and, therefore, it may be presumed that none can be found, in which, after a *nolle prosequi* has been entered by the fiat of the attorney general, this court has taken upon itself to award fresh process, or, has allowed any farther proceedings to be taken on the indictment ; nor if the court were to take that unprecedented course, is there anything to prevent the attorney general from entering a *nolle prosequi toties quoties.*     It is not for us to create a precedent, which, is contrary to the established practice, and which would be fraught with great inconvenience.     Our attention has been called to the practice of the attorney general, and his office, as laid down in the book, to summon the prosecutor, and hear the parties, before granting his fiat for a *nolle prosequi.*     I think, that is a whole-

some practice, and, generally, the law-officer of the crown, before entering a *nolle prosequi*, either *ex mero motu*, or, at the instance of the respondent, and thereby barring the prosecutor from proceeding further, would act wisely, in calling the prosecutor before him. But, from particular circumstances, known to him, or, from the nature of the charge, he may feel called upon to grant his fiat for a *nolle prosequi*, without adopting that course.    Suppose it possible, that there could be an abuse of his power, by the attorney general, or, injustice in the exercise of it, the remedy, is in holding him responsible for his acts before the great tribunal of this country, *the high court of parliament.*   I have no doubt, the attorney general has this power, and this court has never intefered with it."

Justices Crompton and Meller, concurred in the aforesaid opinion of the chief justice, each assigning their own reasons in support of the authority, and powers, claimed in behalf of the prosecuting officer.    Meller remarks :  " If we were to intefere in the manner suggested, a serious conflict might arise, between the jurisdiction of this court, and the functions of the attorney general."

The aforesaid recent decision in England, furnishes abundant reasons why the prosecuting officer should have control over his criminal docket, to the exclusion of the will of any complainant or prosecutor.

But, it is said, that the court is bound to protect the right of Sherman to his moiety of the fines, upon the ground that he is the *prosecutor* in the indictment.      But, how is the court to become acquainted with the fact, that Sherman has acted in that capacity ?     Does it appear of record ?    It has been settled in Massachusetts,  that when a penal staute provides that the penalty may be recovered by indictment, or, civil action, and. one moiety goes to the Commonwealth, and the other to him who prosecutes, or sues for the same, and an indictment is found by the grand jury, it must appear of *record*, that some person complained, or, sued for the same, in order to entitle him to the penalty, otherwise, the whole penalty goes to the Commonwealth.   *Commonwealth* v. *Frost*, 6 Mass. 53.   *Commonwealth* v. *Howard*, 13 Mass. 221.   *Raynham* v. *Rounseville*, 9 Pick. 44.

The aforesald cases of *Frost* and *Howard*, are very similar to the one before us.   They were indictments founded upon like statutes. In the first case, after the conviction of Frost, one Clough came into court, and, alleged that he was the informer or prosecutor in that case, and, asked that a moiety of the penalty should be adjudged to him.    The court replied to him, that it nowhere appeared of record, that he informed, or complained, or, prosecuted ; nor, is it alleged anywhere in the indictment, that any person, other than the Government, was interested in the penalty ; so that, as the record stood, the court were not authorized to award any part of the penalty to Clough, nor, had he any means of obtaining it; and the court declined to relieve him.    So, in England, it has been decided, that when a statute created a penalty, and ordains that one moiety shall

be to the use of the king, and the other to a common informer, the king may sue for the whole penalty, unless a common informer has, previously, commenced a *qui tam* suit, for the same penalty.   *King v. Hymen*, 7 Term. 533.   *Rex* v. *Clark*, Cow. Rep. 610.

In England, there are numerous statutes which grant special favors and gratuities, as reward to prosecutors who may be instrumental in convicting public violators of the law.   The goods are restored to him from whom they were wrongfully taken; definite sums are confessed in other cases as a bounty for the conviction of offenders.   In some other cases, we find the reward to consist in an exemption from the duties of certain offices of a burdensome and disagreeable kind.   We find, also, pardon granted to accomplices, who, bring their associates in crime, to justice.   The practical mode of obtaining these rewards, is generally pointed out by the several statutes that confer them, 1 Chitty's Crim. Law, 824.

In this country, the several statutes creating the rewards for conviction of criminals, also, often designate the just mode of their distribution.   But, in this case, the statute, is silent on this point.   It is, therefore, left for the court to establish a rule of practice, that shall do substantial justice to all in interest.   It is very manifest that the court can obtain correct knowledge of the true *prosecutor*, for offences under this act in each particular case, only through the medium of the prosecuting officer.   In some cases, there may be more than one claimant to the same reward.   Without specific knowledge, the court will, naturally, stand on the Massachusetts rule of practice, assuming, until otherwise informed by record testimony, that the state is entitled to the whole of the statute penalty.   The prosecutor will, therefore, appeal to the prosecuting officer, and request him to furnish to the court, the competent and requisite evidence in the case.   We think, this may be appropriately done, either by some suitable averment, incorporated into the indictment itself, or by the endorsement of the prosecutor's name on the back of the indictment, thus showing that he is fully recognized by the solicitor, or attorney general, as the *bona fide* prosecutor in that case.   Upon the reception by the court, of evidence of this nature, they will be enabled to appropriate the fine, according to the intent of the statute, and without the hazard of mistake in the premises.   In this way, both the state and prosecutor, respectively, obtain their rights, and the long and well established reputation, and independent action of the prosecuting officers are sustained, without interferance, and the imputation implied in the prosecutor's motion here.

*Motion denied.*