Strafford
No. 87-136

THE STATE OF NEW HAMPSHIRE

v.

RICHARD A. KING

December 9, 1988

*Stephen E. Merrill*, attorney general (*Robert B. Muh*, assistant attorney general, on the brief and orally), for the State.

*Alfred Catalfo, Jr.*, of Dover, by brief and orally, for the defendant.

PER CURIAM. After two days of the defendant's trial on charges of aggravated felonious sexual assault under RSA 632-A:2, the Superior Court (*Nadeau*, J.) granted the State's motion for a mistrial. The defendant moved to prohibit a second trial, and we accepted an interlocutory transfer without ruling from the superior court. Because we hold that the federal constitutional prohibition against double jeopardy bars retrial of the defendant, we remand for a ruling consistent with this opinion.

The defendant was indicted for aggravated felonious sexual assault of his wife under RSA 632-A:2. On March 2, 1987, two assistant county attorneys conducted the selection of a twelve-person jury plus an alternate on behalf of the county attorney, who would prosecute the case on behalf of the State. The defendant's trial began the next afternoon, March 3, and continued through the afternoon of March 4. During the two days, the State presented five witnesses.

On the morning of March 4, after the first day of trial and testimony by three witnesses, the county attorney informed the trial court that he was acquainted with one juror, whom the court then excused at the defendant's request and replaced with the alternate. On the morning of March 5, after the second day of trial, the county attorney informed the court that the excused juror had called him at home to express concern about other jurors whose comments suggested that they had predetermined the defendant's guilt. In

order to assess the extent of prejudice among the jurors, the court questioned the jurors individually in the presence of the county attorney and counsel for the defendant.

The jury examination revealed that one juror had made a jesting comment about the defendant's guilt. Jurors who overheard the comment denied that they had been prejudiced as a consequence. At the conclusion of the *voir dire*, the defendant indicated that he wished to proceed with the trial. The trial court advised the defendant of his options for correcting the potential problem of prejudice: request a mistrial, request removal of the juror who made the jesting remark and agree to trial by eleven jurors, or agree to a non-jury trial. The defendant, in response, asked the court to dismiss the juror who made the jesting remark, and then waived both his right to trial by a twelve-member jury and his right to request a mistrial.

Following the defendant's election to continue the trial, the State moved for a mistrial, citing in support the unusual circumstances of the twice-depleted jury and the mid-trial jury *voir dire*. The trial court initially denied the State's mistrial motion, then reconsidered its ruling, and eventually granted the motion over the defendant's objection. In declaring a mistrial, the trial court acknowledged that the jury was capable of rendering a fair verdict. The court indicated therefore that the motivation for its decision was not concern with the jury's capacity for fairness. Rather, the court explained its concern was with possible damage to the public's perception of fairness in the well-publicized trial, as a consequence of the juror's jesting remark and resultant *voir dire* procedure and mistrial motions by the State.

The defendant then filed a motion to prohibit a second trial, on the ground that retrial would violate the double jeopardy provisions of the Federal and State Constitutions. At the same time, the defendant moved for an interlocutory transfer to this court for resolution of the double jeopardy issue. The trial court approved the interlocutory transfer and deferred ruling on the motion to prohibit retrial of the defendant, pending this court's disposition of the interlocutory transfer.

The defendant asserts that there was no manifest necessity compelling the trial court to declare a mistrial over the defendant's objection. The defendant therefore contends that the double jeopardy prohibitions of both the United States Constitution and the New Hampshire Constitution bar his retrial.

■ We note, as a preliminary matter, that an interlocutory transfer is proper at this juncture, where the defendant otherwise would be subject to a retrial and thence, he asserts, to double jeopardy in violation of both the Federal and State Constitutions. *See State v. Janvrin*, 121 N.H. 370, 371, 430 A.2d 152, 153 (1981) (citing *Abney v. United States*, 431 U.S. 651, 660–62 (1977)).

■ Because the federal double jeopardy provision affords the defendant the relief he seeks, we decide this case under the Federal Constitution. The fifth amendment states: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The premise of the federal double jeopardy provision is that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187–88 (1957). In brief, the prohibition protects a criminal defendant's right "to have his trial completed by a particular tribunal." *See Wade v. Hunter*, 336 U.S. 684, 689 (1949).

■ The double jeopardy issue arises, however, only if the defendant has been subject to jeopardy once before. Jeopardy attaches when trial of the defendant begins, *United States v. Jorn*, 400 U.S. 470, 479 (1971), which, in a jury trial, is when the jury is empanelled and sworn, *see Crist v. Bretz*, 437 U.S. 28, 29, 38 (1978) (extending to States the federal jeopardy attachment rule as an integral part of the fifth amendment guarantee); *United States v. Jorn, supra* at 474–75.

■■ Nonetheless, even if jeopardy has attached in a jury trial and the defendant is satisfied that the jury will be fair, the Federal Constitution permits the trial judge to terminate the trial prematurely without the defendant's consent, and without foreclosing the defendant's retrial on the same charge, where there is a "manifest necessity for the act [the mistrial], or the ends of public justice would otherwise be defeated." *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824). Justice Story warned, however, that the power to declare a mistrial "ought to be used with the greatest caution, under urgent circumstances, and for plain and obvious reasons." *Id.* Modern decisions indicate that manifest necessity and the ends of public justice are not alternatives; they form a single broad command to trial judges. *See Wade v. Hunter, supra* at 689–

90; *United States v. Jorn, supra* at 485. The mistrial exception to the double jeopardy prohibition thus allows for unforeseeable circumstances that necessitate a jury's premature discharge, over the defendant's objection, where the public's interest in a fair trial so requires. *See Arizona v. Washington,* 434 U.S. 497, 505 (1978); *Wade v. Hunter, supra* at 688–89; *cf. Oregon v. Kennedy,* 456 U.S. 667, 675–76, 679 (1982) (mistrial at behest of defendant does not bar retrial unless prosecutor purposely provoked defendant's mistrial motion).

■ The United States Supreme Court has explicitly refrained, however, from devising a bright-line standard for "manifest necessity," *United States v. Jorn, supra* at 480, preferring, instead, to defer to the trial judge's exercise of sound discretion in weighing the government's and the defendant's competing interests. *See United States v. Jorn, supra* at 479–81, 485–86. Still, the Court has acknowledged that an involuntary mistrial requires a "high degree" of necessity, *Arizona v. Washington, supra* at 506, and that a truly deadlocked or biased jury satisfies the standard, *see Oregon v. Kennedy, supra* at 672; *Arizona v. Washington, supra* at 509; *Wade v. Hunter,* 336 U.S. at 689, whereas a prosecutor's need to buttress evidentiary weaknesses does not, *Downum v. United States,* 372 U.S. 734, 736 (1963) (citing *Gori v. United States,* 367 U.S. 364, 369, *reh'g denied,* 368 U.S. 870 (1961)).

■■ Supreme Court decisions suggest, moreover, that a trial judge contemplating a mistrial should first consider and find wanting all feasible, less drastic alternatives, *see United States v. Jorn,* 400 U.S. at 486–87, and, upon rejecting such alternatives, provide reasons for and afford counsel an opportunity to be heard on the proposed mistrial, *see Arizona v. Washington, supra* at 515–16. Assuming that the record reflects the trial judge's consideration of alternatives and documents the necessity for the mistrial, the mistrial order will pass constitutional muster and permit the defendant's retrial. *See Arizona v. Washington supra; cf. United States v. Jorn, supra* at 487 (mistrial improper where trial court failed to consider alternatives fully).

In the case at bar, the trial judge granted the State's motion for mistrial on the ground that the aggregate effect of the mid-trial *voir dire* and the State's requests for mistrial, as well as the juror remark at the root of the controversy, undermined the public's perception of fairness in the trial. Given the defendant's wish to continue the trial and consequent objection to termination in a mistrial, the trial judge's order was an exercise of sound discretion

under the Federal Constitution only if there was "manifest necessity" for the mistrial and "the ends of public justice would otherwise be defeated." *See United States v. Perez*, 22 U.S. (9 Wheat.) at 580. Prior decisions of the United States Supreme Court indicate that, absent the defendant's consent, the trial judge should consider and find wanting all feasible alternative means of dissipating prejudice before resorting to a mistrial. *See United States v. Jorn supra*. The record before us reflects the trial judge's successful efforts to assess and remedy prejudice on the part of the jury. First, the trial judge excused the juror acquainted with the county attorney. Second, he conducted a *voir dire* of individual jurors who, in response, asserted their lack of prejudice. Third, at the conclusion of the *voir dire*, when the defendant indicated his wish to proceed with trial, the trial judge explained the defendant's remedial alternatives, including a mistrial, and the defendant opted to have one more juror excused and to proceed with a jury of eleven.

Yet, notwithstanding the apparent effectiveness of the alternative measures in addressing possible prejudice, the trial judge granted a mistrial in purported furtherance of the public's interest. We find that the record does not substantiate the trial judge's concern that one possible effect of the broad publicity, given the remedial procedures, was a widespread perception of unfairness in the trial. The negative impact on the public's perception of fairness was wholly speculative, and did not manifestly necessitate a mistrial to further the ends of public justice. We express no opinion on the result that would be appropriate in a case in which the trial judge had no reason to expect unfairness but did have reason to expect that the public would mistakenly perceive the trial as unfair.

In the absence of evidence that the remedies implemented prior to granting the mistrial were insufficient to protect both the defendant's and the public's interest in fairness, we find that no "manifest necessity" compelled the mistrial. Consequently, because the order granting the mistrial was not grounded in the exercise of sound discretion, and jeopardy had attached once the jury was empanelled and sworn, *see Crist v. Bretz*, 437 U.S. at 29, 38, we hold that the double jeopardy prohibition of the Federal Constitution bars the defendant's retrial.

*Remanded.*

BROCK, C.J., concurred specially.

BROCK, C.J., concurring specially: The defendant having raised a State constitutional claim, arguing that part I, article 16 of our State Constitution precludes his retrial, I would first address that issue. *State v. Ball*, 124 N.H. 226, 471 A.2d 347 (1983). Because I am convinced that neither a literal reading nor independent analysis of the State double jeopardy provision would preclude retrial of the defendant in the dispute now before us, I join in the opinion of the Court.