Rockingham
No. 88-387

THE STATE OF NEW HAMPSHIRE

v.

HERBERT A. FOWLER, JR.

December 28, 1989

*John P. Arnold,* attorney general (*Andrew W. Serell,* senior assistant attorney general, on the brief and orally), for the State.

*Stephen T. Jeffco P.A.,* of Portsmouth (*Stephen T. Jeffco* and *Richard N. Foley* on the brief, and *Mr. Jeffco* orally), for the defendant.

JOHNSON, J. The defendant, Herbert A. Fowler, Jr., was convicted of two counts of first degree murder, RSA 630:1-a, following a jury trial. On appeal, the defendant contends that the Trial Court (*Gray,* J.) erred in overruling his objections to testimony of a police investigator and to part of the prosecutor's closing argument as improper comments on the defendant's silence. For the reasons set out below, we affirm.

The essential facts are as follows. On October 27, 1987, Louis Mills, III, and June Dow were found dead in Mills' trailer in Seabrook. Both deaths were caused by shotgun wounds. During the investigation, State Police Sergeant John Barthelmes found four spent shotgun shell casings at the scene, three outside the front door and one inside the trailer. With the assistance of another police officer, Sergeant Barthelmes took measurements and drew diagrams depicting various objects and pieces of furniture within the trailer. Using these diagrams and a notebook, Sergeant Barthelmes documented the location of the casings and other objects taken as evidence. The officers also measured the location of several holes found in the side of the trailer.

During the cross-examination of Sergeant Barthelmes, defense counsel questioned him about some of the measurements he had taken. The following exchange then occurred:

"Q. Okay. Who from the State Forensic Laboratory went down to that trailer to do trajectory studies?

A. I can't answer that question. I don't know.

Q. Actually, no one did to your knowledge, did they?

A. To my knowledge, I don't know of anybody.

Q. Not only that, but neither yourself nor any other state police officer did trajectory studies, did you?

A. I can only answer for myself. I did not do a trajectory study.

Q. And to your knowledge, no one else under your direction did, did they—

A. No.

Q. —is that right? So in other words, we cannot tell the angle of the shots, is that right, number one, because no trajectory studies were done, is that correct?

A. Well, as I said, I have taken accurate measurements to document exactly the location of those entry shot patterns, the exit patterns. All those measurements, all the information is there, so either you or anybody else who would like to do whatever studies are capable or possible with that information can do it. I did not."

During the State's redirect examination of Sergeant Barthelmes, the prosecutor attempted to rehabilitate his witness in the following manner:

"Q. You were asked some questions as to whether you did—took certain measurements and made certain studies within the trailer. Before today, did Mr. Jeffco speak with you in connection with this case at all?

A. No, he did not.

Q. Would he have had that opportunity?"

At this point defense counsel objected and moved for a mistrial on the ground that the State was attempting to shift the burden of proof. The court overruled the objection and denied the motion for a mistrial, stating, "the State was not in the Court's opinion attempting to show you had such a duty.... I don't think that you can examine the officer and implant a suggestion that he came

unprepared when in fact the opportunity was available for both sides to obtain that information."

Following this exchange, the prosecutor completed his examination of Sergeant Barthelmes on this subject.

"Q. Sergeant, the question was, would Mr. Jeffco have had the opportunity to speak with you in connection with this case?

A. Would he have had the opportunity?

Q. Yes.

A. Yes, he would have.

Q. Did Mr. Jeffco ask you at any time to take any additional measurements in addition to those that you took?

A. No, he did not.

Q. Did he ask you to measure any angles?

A. No, he did not.

Q. Did he ask you to perform any trajectory studies?

A. No, he did not.

Q. The physical evidence, such as the wallet which you seized from the scene, that was taken to the State Forensic Lab, is that right?

A. Yes.

Q. And could that piece of evidence, that wallet, have been fingerprinted at the lab upon request?

A. It could have, yes."

The evidence seized at the trailer was given to Roger Klose, the State's forensic specialist. Mr. Klose was also given the defendant's 12-gauge shotgun, which was seized from the defendant's cousin's home pursuant to a consent search. During the direct examination of Mr. Klose, he explained that firearms leave impressions on shell casings when they are discharged. Therefore, by comparing casings known to have been discharged from a particular gun (test specimens) with the subject casings, one can determine whether they were discharged from the same gun. In this case, using a microscope, Mr. Klose concluded that all four of the shotgun shell casings recovered from the trailer could be traced to the defendant's 12-gauge shotgun.

During closing arguments, Mr. Klose's opinions were attacked by defense counsel. He was also criticized because he was the only one who saw and compared the markings on the test specimens and on the casings seized at the trailer. Defense counsel suggested that enlarged photographs of the microscopic markings should have been displayed to the jury.

In his closing argument, the prosecutor asked the jury: "Has the defense presented you with any reasonable alternative to the one conclusion that all the evidence in this case points to?" Defense counsel objected on the ground that the prosecutor was "shifting the burden of proof." The court responded by immediately instructing the jury that the burden of proof was on the State, and that the defendant did not "have to prove his innocence or any other fact." It is important to note that during individual *voir dire*, each juror was questioned by defense counsel as to his or her understanding and acceptance of these basic principles relating to a criminal jury trial. Further, in both its preliminary and its closing instructions, the trial court properly informed the jury of the State's burden of proof and the defendant's presumption of innocence, and of the lack of any burden on the defendant to prove his innocence.

Later in his closing, the prosecutor commented on the defendant's argument that Roger Klose's opinions should not be given weight and that he should have brought photographs of the markings on the shotgun shell casings. The prosecutor then stated: "That's the extent of the defense's attack on Roger Klose's conclusions and it's a pretty sorry effort. The defense has done nothing to try to call into question or to demonstrate—." Defense counsel again objected and argued that the State was still attempting to shift the burden of proof. The court overruled the defendant's objection and allowed the prosecutor to continue.

Ordinarily, burden of proof considerations in a criminal trial implicate the due process clause. *See Francis v. Franklin*, 471 U.S. 307, 313 (1985) (due process clause of the fourteenth amendment requires the State to prove every essential element of the crime charged beyond a reasonable doubt). Although at trial the defendant couched his objections in terms of burden of proof, it appears that he was actually concerned with his privilege against self-incrimination, and it is on this privilege that he bases his arguments before us. Therefore, self-incrimination is the only constitutional issue we will consider.

The defendant contends that the comments of Sergeant Barthelmes and the State which he objected to, either alone or in conjunction with the prosecutor's closing statements, violated his

right to remain silent under the State and Federal Constitutions. Alternatively, the defendant argues that he was preponderantly and irremediably prejudiced by the statements, thereby requiring a mistrial.

Before addressing the substance of the defendant's arguments, we must establish whether the defendant's State constitutional issue is properly before us. When a defendant specifically invokes the State Constitution, we will normally consider those constitutional claims before addressing federal claims. *State v. Dellorfano*, 128 N.H. 628, 632, 517 A.2d 1163, 1166 (1986); *State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 351 (1983); *see State v. King*, 131 N.H. 173, 176, 551 A.2d 973, 975 (1988) (State constitutional issue not addressed because relief was available under Federal Constitution). "However, the defendant must fulfill two preconditions before triggering a State constitutional analysis: first, the defendant must raise the State constitutional issue below; second, the defendant's brief must specifically invoke a provision of the State Constitution." *Dellorfano supra* (citation omitted).

When defense counsel objected to the prosecutor's comments at trial, he argued that the State was attempting to shift the burden of proof by implying that the defendant had a duty to present evidence, but he did not mention the State Constitution either generally or by citing a specific provision. Therefore, his argument was insufficient to satisfy the first precondition required by *Dellorfano*. Accordingly, "[b]ecause the defendant has failed to meet his procedural burden of properly raising a State constitutional issue, we address only his federal claim." *State v. Ramos*, 131 N.H. 276, 281–82, 553 A.2d 275, 279 (1988).

A defendant's decision not to testify or present evidence in his own defense can provide no basis for an adverse comment by the prosecutor. *State v. Kelly*, 113 N.H. 222, 223, 306 A.2d 58, 59 (1973). Comments which may be construed as unfavorable references to the failure of a defendant to testify are contrary to RSA 516:32 and are violations of a defendant's constitutional rights against self-incrimination. *State v. Fowler*, 110 N.H. 110, 112, 261 A.2d 429, 430 (1970) (citing *Griffin v. California*, 380 U.S. 609 (1965)).

In the present case, the defendant urges this court to find that the offending comments fall within the parameters of *Griffin*. In *Griffin*, the United States Supreme Court held that the prosecutor's comments on the defendant's failure to testify, which included the statement: "'Essie Mae is dead, she can't tell you her side of the

story. The defendant won't.'", violated the defendant's right against self-incrimination under the fifth and fourteenth amendments of the United States Constitution. *Griffin*, 380 U.S. at 615. We disagree with the defendant's reliance on this case and find the analysis in *United States v. Robinson*, 108 S. Ct. 864 (1988), more to the point.

In *Robinson*, defendant's counsel remarked in closing argument that the government did not allow the defendant to explain his side of the story. *Id.* at 866. During his summation the prosecutor stated that the defendant "'could have taken the stand and explained it to you ....'" *Id.* The court held that this comment did not violate the defendant's fifth amendment right against self-incrimination because it was "a fair response to a claim made by defendant or his counsel." *Id.* at 869. The court explained that it is important in a criminal trial for "both the defendant and the prosecutor [to] have the opportunity to meet fairly the evidence and arguments of one another." *Id.* at 870. Therefore, the court refused to expand *Griffin* to forbid the prosecutor to fairly respond to the defendant's argument, even though such a response adverted to the defendant's silence. *Id.*

In this case the remarks of Sergeant Barthelmes and the prosecutor, which the defendant asserts were improper, were offered in response to the defendant's suggestion that the State neglected to pursue important investigative avenues. They were intended to demonstrate that the defendant himself did not regard those avenues sufficiently important to request that they be pursued. The defendant "opened the door" to such comment, *see State v. Sullivan*, 131 N.H. 209, 213, 551 A.2d 519, 522 (1988), which was permissible because the prosecutor merely suggested that the defendant had the opportunity to obtain the subject information. He did not infer that the defendant had a duty to do so.

The same reasoning supports the State's position relative to the prosecutor's closing argument concerning Roger Klose. The defendant criticized Mr. Klose's opinions, and the State was entitled to respond. *See Robinson*, 108 S. Ct. at 869–70; *see also State v. Judkins*, 128 N.H. 223, 225, 512 A.2d 427, 429 (1986) (State allowed to introduce otherwise inadmissible evidence to rebut erroneous impression created by defendant); *Kelly*, 113 N.H. at 223, 306 A.2d at 59 (where defendant injects into trial his activities with a potential witness in order to establish an alibi, State may comment on defendant's failure to call such a witness).

In his final argument, the defendant contends that although the prosecutor did not directly comment on the defendant's failure to testify when he asked the jury: "Has the defense presented you with any reasonable alternative to the one conclusion that all the evidence in this case points to?", the remark was an improper reference to the defendant's constitutional right to remain silent. However, we need not decide the propriety of this statement because any harm caused by the prosecutor was cured after defense counsel's objection by the trial court's prompt instruction to the jury concerning the proper burden of proof in a criminal case. *See State v. Lovely*, 124 N.H. 690, 697, 480 A.2d 847, 851 (1984).

Since we find no constitutional violations concerning two of the challenged comments, and we find that the third was corrected by an immediate curative instruction, we need not consider the doctrine of harmless error or the standard for declaring a mistrial. *See State v. Merrill*, 125 N.H. 479, 480, 484 A.2d 1065, 1066 (1984).

*Affirmed.*

All concurred.