Rockingham
No. 88-346

THE STATE OF NEW HAMPSHIRE

v.

RICHARD HARTFORD

December 29, 1989

*John P. Arnold,* attorney general (*Peter G. Beeson,* assistant attorney general, on the brief and orally), for the State.

*James E. Duggan,* appellate defender, of Concord, by brief and orally, for the defendant.

SOUTER, J. In this prosecution for reckless manslaughter, the defendant appeals a declaration of mistrial by the Superior Court (*Gray,* J.) claiming it was error, both to deny the defendant's request for a modified *Allen* charge before discharging the deadlocked jury, and to declare the mistrial without articulating

reasons for refusing to attempt to break the deadlock by giving such an instruction. We affirm.

For some hours prior to his death, the victim, one Welch, and several companions ingested cocaine provided by the defendant, Richard Hartford. At the conclusion of these activities, the defendant urged the victim to eat an eighth of an ounce of the drug (less one gram, which had already been separated out and distributed to the victim and one other person), and either handed the substance to the victim or placed it in the victim's mouth. Once he was satisfied that the victim had consumed the cocaine, the defendant is said to have remarked that he had told the victim's wife that he'd "find a way to kill" him. When the victim collapsed in convulsions twenty-five minutes later, the defendant refused to call an ambulance. Although one of the victim's companions was able to get him to a hospital, with the help of the police, on arrival the victim was pronounced dead from cocaine intoxication caused by massive overdose. Later that night the defendant told the victim's wife that he had forced the victim to eat the cocaine.

The defendant was indicted for possession of cocaine with intent to sell, sale of cocaine, RSA 318-B:2, I (Supp. 1988), and reckless manslaughter, RSA 630:2, I(b). At trial, the State presented nine witnesses whose testimony consumed the equivalent of two trial days; the defense offered no evidence. The ensuing arguments of counsel concentrated almost exclusively on the manslaughter charge, focusing on the evidence for a cause intervening between the defendant's acts and the victim's death. The court instructed the jury on causation as an element of the charges of manslaughter and the lesser-included offense of negligent homicide.

After less than three hours of deliberation, the jury sent out a request for further instruction on causation:

"(1) Review and clarify the following phrases:

'Causation,' 'direct result of' and 'intervening cause.'

(2) How does the exercise of force, either physical or psychological, have a bearing on the death being a direct result and whether or not there was an intervening cause?"

After responsive instructions, the jurors were excused for the night. Late on the following day, after deliberating a total of eleven hours, the jurors sent out the following note:

"Reckless Manslaughter and the lesser included charge of negligent homicide we cannot decide. However, we have a decision on the charge of possession with intent to distribute and on the charge of sale. What do we do now?"

The court read this to counsel and informed them that a bailiff had enquired on the court's behalf whether the jury was "hopelessly deadlocked, and that the answer unanimously was yes."

Defense counsel then asked the court to deliver a modified *Allen* charge, so-called, as approved by this court in *State v. Jordan*, 130 N.H. 48, 50, 534 A.2d 378, 379 (1987), to encourage the jury to try further to reach a reasonable consensus despite its ostensible deadlock, *see* ABA STANDARDS FOR CRIMINAL JUSTICE, *Trial by Jury*, Standard 15-4(a), at 15-134 (2d ed. 1986). The court responded that "[the jury has] been out for eleven hours. I'm going to ask them is there any way that they can decide this case with more deliberations."

Although defense counsel admitted that the evidence bearing on the sale and possession charges was more compelling than the evidence on homicide, they argued that the court should not take any separate verdicts, lest the jurors find it too easy to end their deliberations without a verdict on the third indictment. In the same vein, the defense urged the court not to "sever" the three indictments, but either to take three verdicts or declare three mistrials. The State argued to the contrary and encouraged the court to enquire "whether there is any hope that further discussion on the manslaughter charge might prove helpful." The court decided to ask the jurors "if any further deliberation would be of assistance to them," and to declare a mistrial on the manslaughter charge if the answer turned out to be no.

When the jurors returned to the courtroom, the judge read their note into the record and had the following colloquy with the foreman:

"*The Court*: Mr. Foreman, before we proceed, I want to ask you, keeping in mind that no other 12 people hearing the same evidence and charged the way you were and argued to the way you were by counsel would be any better equipped to decide this case or this particular charge, would any further deliberation be of assistance to this jury in deciding the charge of reckless manslaughter or negligent homicide?

*The Foreman*: No, I don't believe so.

*The Court*: Is the jury, in your opinion, on that charge hopelessly deadlocked?

*The Foreman*: Yes."

The court proceeded to take the two verdicts of guilty on the drug charges and, after excusing the jurors from the courtroom, declared a mistrial on the charge of homicide:

"It is the court's opinion that after 11 hours of deliberation on the indictment alleging reckless manslaughter that the jury is hopelessly deadlocked and the court, therefore, as to that indictment declares a mistrial."

Again, defense counsel requested a modified *Allen* charge to test whether the deadlock was hopeless. Failing that, counsel moved for a declaration of mistrial on all three charges. This was denied.

In this appeal from the order of mistrial, two threshold issues warrant brief attention. Although the defendant rests his claims on the guaranty against double jeopardy, nowhere does he indicate whether he relies on the Constitution of New Hampshire, part I, article 16, or on the National Constitution, amendments V and XIV. *See Benton v. Maryland*, 395 U.S. 784 (1969). Accordingly, we follow our accepted practice of construing the claim as predicated on federal law. *See State v. Fowler*, 132 N.H. 540, 545, 567 A.2d 557, 560 (1989); *State v. Dellorfano*, 128 N.H. 628, 632, 517 A.2d 1163, 1166 (1986). And although the declaration of mistrial does not, without more, reveal the State's intentions, its counsel has represented in open court that the State will seek to retry the defendant on the manslaughter charge. The State thereby, in effect, stipulates that the appeal from the mistrial order should be treated as if it were taken from the denial of a contested motion to dismiss for double jeopardy. We will consequently treat the appeal in that light, although without meaning to condone the procedural looseness hereby disclosed.

■ The first assignment of error, as to the declaration of mistrial over the defendant's objection and despite his request for further instruction addressing the deadlock, is in substance a claim that the trial judge abused his discretion, *see United States v. Perez*, 22 U.S. 579, 580 (1824), by discharging the jury without the "manifest necessity," *id.*, for so doing or the assurance that the "ends of public justice would otherwise be defeated," *id.*, that is needed to justify retrial in derogation of a claim of right under the fifth amendment to be free of further jeopardy, *see Arizona v. Washington*, 434 U.S. 497, 505 (1978); *cf. Oregon v. Kennedy*, 456

U.S. 667 (1982) (manifest necessity standard inapplicable when mistrial declared at defendant's request). Ever since *Perez* itself, a hung or deadlocked jury has been understood to present a classic occasion of such necessity, *Oregon v. Kennedy, supra* at 672; *Downum v. United States,* 372 U.S. 734, 736 (1963), understood as a high degree of need, *Arizona v. Washington, supra* at 506, to allow the public one "full and fair" opportunity to try the defendant, *id.* at 505.

■ The law being thus settled, our present concern must be with the adequacy of the evidentiary basis for judging whether the requisite degree of necessity existed in fact. It has been clear since *Perez* that any discretionary decision finding necessity, *see Perez supra; Arizona v. Washington, supra* at 514, should be predicated on the arguments and observations of counsel, on consideration of less drastic alternatives than mistrial, and on assurance of a reasonable basis for rejecting those alternatives, *State v. King,* 131 N.H. 173, 177, 551 A.2d 973, 976 (1988). In deciding whether the record discloses a sufficiently sound predicate, however, the appropriate degree of scrutiny by a reviewing court will vary, depending on the grounds for the mistrial, ranging from a standard of the greatest strictness when prosecutorial weakness is claimed to justify discharging the jury, *Arizona v. Washington, supra* at 507–08, to one of "great deference" when a classic instance of jury deadlock is found to be the reason, *id.* at 509–10. The deferential standard is applied in the latter case, lest undue judicial reluctance to discharge a hung jury force the jurors into deliberating so long that their verdict would more likely reflect "pressures inherent in the situation," *id.,* than honest unanimity in finding the facts.

Given the deference thus due, the record in support of the trial judge's decision is up to the mark in the instant case. The most likely inference from the record is that the jury spent little time on the two drug charges, and we know that in less than three hours on the first day of deliberations they had become perplexed over the issue of causation, which presented the principal difficulty in reaching a verdict on either manslaughter or the lesser-included offense of negligent homicide. After reinstruction, the jurors were excused for the day, and they returned to deliberate with fresh minds the following morning. Since they sought no further instructions, we may suppose that the time consumed in deliberation thereafter was spent in trying to resolve a factual issue, not in puzzlement over the law, and this supposition appears all the more reasonable when we consider the possibilities for disputing whether the defendant "forced" the victim to eat the cocaine. The

jurors spent another eight hours trying to resolve the difficulty standing in the way of agreement, and by the time they professed inability to reach a verdict their deliberations of eleven hours were approaching the length of the evidentiary phase of the trial itself.

Even in these circumstances the trial judge made no snap judgment. He heard counsel on each side and had the benefit of defense arguments against "severing" the charges and against declaring any mistrial without giving a modified *Allen* charge and an opportunity for further deliberation. He then satisfied himself that the foreman's report of deadlock was accurate, by questioning him in open court and in the presence of the other jurors, none of whom indicated any disagreement with the foreman's statement. It will be recalled, moreover, that the questioning itself alluded to the approved deadlock charge, by taking as its premise that no other twelve jurors hearing the same evidence, arguments and charge would be any better equipped to decide the case than the twelve who had already heard it. *See State v. Jordan*, 130 N.H. at 50, 534 A.2d at 379. We are far from agreeing with defense counsel that this form of questioning betrayed a belief on the judge's part that the deadlock charge should be given. It strikes us, rather, that he was making sure the jurors understood that "hopeless deadlock" meant something more than mere difficulty or discomfort at the prospect of a hard decision.

In sum, the court had evidence of the following good reasons for declaring a mistrial: the difficulty in reaching a verdict probably turned on an issue about which the jury had sought and obtained as much legal elucidation as the court could give; after the issue had been focused by reinstruction, the jury had addressed it freshly on a second day of deliberation and had deliberated that entire day; the length of deliberation was approaching the length of trial; the jurors apparently understood the demanding standard for measuring deadlock. *See Arnold v. McCarthy*, 566 F.2d 1377, 1386–87 (9th Cir. 1978) (factor analysis to determine genuine deadlock). The court thus satisfied both the procedural and substantive predicates of a reasonable exercise of discretion to find manifest necessity to discharge. Neither, to be sure, would the judge have abused his discretion by calling the jurors back the next morning for the deadlock charge approved in *State v. Jordan supra* and another chance to consider the evidence. But the point is that in declining to take this latter course, the judge had reasonable grounds and, on the appropriately deferential standard of review, is entitled to be upheld. Indeed, the alternative of requiring a deadlock charge as a matter of law before finding manifest

necessity would run afoul of the refusal of the Supreme Court of the United States to assess the fifth amendment significance of mistrials by applying a mechanical formula, *see Illinois v. Somerville*, 410 U.S. 458, 462 (1973), a refusal wholly in accord with the spirit of the *Perez* opinion itself, which disclaimed the possibility of enumerating all the considerations on which a finding of manifest necessity could depend, *see United States v. Perez*, 22 U.S. at 580.

We may deal more briefly with the second argument, that the record in support of the declaration of mistrial is defective without an express statement of a substantial reason for declining to give a deadlock charge. This is simply a variant of the demand that the finding of manifest necessity be explicit, a requirement flatly rejected in *Arizona v. Washington*, 434 U.S. at 516, as this court has previously recognized in rejecting such a claim under both the National and State Constitutions: "Before he declares a mistrial [not requested by the defendant], a trial judge need not expressly find a manifest necessity or specifically state that he has considered all the alternatives and found none adequate." *State v. Brady*, 120 N.H. 899, 902, 424 A.2d 407, 409 (1980) (citing *Arizona v. Washington supra*). *State v. King supra* is not to the contrary. Although at one point the opinion speaks of a need to provide reasons for rejecting alternatives less drastic than mistrial, 131 N.H. at 177, 551 A.2d at 976, the opinion proceeds to describe the standard of review expressed in *Arizona v. Washington, supra* at 515, under which the order of mistrial will be affirmed if the record reflects the court's consideration of alternatives and the necessity for discharging the jury. This is not to deny that the better practice is to make such findings explicitly, for the record on appeal may not reveal all the evidence perceived by the trial judge as bearing on the reasonableness of his decision, and appellate judges may not necessarily interpret the record in just the way that they would do in light of explicit findings. The fact remains, however, that the record now before us supports the decision in question, which will be affirmed.

*Affirmed.*

All concurred.