Hillsborough
No. 89-473

### THE STATE OF NEW HAMPSHIRE

v.

### LARRY POND

December 28, 1990

*John P. Arnold*, attorney general (*Mark E. Howard*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant appeals his conviction for aggravated felonious sexual assault, RSA 632-A:2, XI, after a jury trial in Superior Court (*Groff*, J.). He raises two issues for our review: (1) whether, after the impaneling of the jury at a previous trial, the State may *nol pros* its case in order to correct a defective indictment and then later retry the defendant on the same charge without violating the prohibition against double jeopardy; and (2) whether the defendant's right to a speedy trial was violated. Because we hold that double jeopardy bars retrial of the defendant, we reverse. Consequently, we need not address the second issue.

The pertinent facts are not in dispute. Before he was ultimately convicted, the defendant was charged with the same offense in four successive indictments. The original indictment, obtained in November, 1986, alleged that the defendant sexually assaulted his ten-year-old son during June and July of 1986. After the defendant both filed and withdrew a notice of intent to plead guilty, the State, in December, 1987, replaced the original indictment with one that changed the alleged date of the offense to April, 1986. Thereafter, the defendant filed a notice of intent to rely on an insanity defense, and a trial date was set for April, 1988.

In early April, 1988, due to delays in obtaining a mental health evaluation of the defendant, the trial date was continued until May. On April 19, the State once again obtained a replacement indictment, this time amending the *mens rea* from "purposely" to "knowingly." Once more the trial date was moved, but the delay was short, and on May 18, a jury was selected and sworn. Subsequently, before the State began its case, the defendant moved to dismiss the indictment, claiming that the mental state of "knowingly" in the indictment was incorrect. Pursuant to an off-the-record bench conference, the Supe-

rior Court (*Dalianis*, J.) responded to the motion to dismiss, stating that

> "[t]he state has just now nol-prossed Indictment 88-834, . . . indicating its intention to reindict on this particular charge. However, since this is one link of a fairly important issue, the court ought to flush out the record on the matter and in fact does, although post nol-pros, grant the defendant's motion to dismiss. . . ."

On May 24, the grand jury, correcting the *mens rea* to "purposely," reindicted the defendant on the charge of aggravated felonious sexual assault for the fourth and final time. The defendant moved for dismissal of this indictment on double jeopardy and speedy trial grounds, which the Superior Court (*Dalianis*, J.) denied. The case proceeded to trial on April 17, 1989, and the defendant was convicted two days later.

On appeal, the defendant argues that if the State, with its unfettered discretion to *nol pros* a case, exercises that discretion after the jury has been impaneled, then the double jeopardy clauses of the State and Federal Constitutions, *see* N.H. CONST. pt. I, art. 16; U.S. CONST. amend. V, protect him from a retrial on the same charge. The State responds that it *nol prossed* the case in response to the defendant's motion to dismiss in order to expedite matters and that, therefore, the *nolle prosequi* served as the functional equivalent to a judicial dismissal. As such, argues the State, the *nolle prosequi* adequately met the "manifest necessity" requirement under double jeopardy analysis, and retrial of the defendant is thus permissible.

 The State acknowledges that in the present case jeopardy attached when the jury was impaneled. *See State v. Janvrin*, 121 N.H. 370, 371, 430 A.2d 152, 153 (1981). It further admits that once attached, jeopardy bars retrial unless the mistrial or dismissal is based on a finding of "manifest necessity" by the trial court. *Id.* Determining whether this standard has been met involves weighing the prosecution's and the defendant's competing interests, which is a task left to the sound discretion of the trial judge. *State v. King*, 131 N.H. 173, 177, 551 A.2d 973, 975 (1988) (citing *United States v. Jorn*, 400 U.S. 470, 479–81, 485–86 (1971)).

 Conversely, the prosecutor's decision to *nol pros* a case is a unilateral one, requiring no application of or adherence to the "manifest necessity" standard. Under the common law, the decision to *nol pros* is a prerogative of the prosecutor. *State v. Smith*, 49 N.H. 155,

157 (1870). While many jurisdictions have abrogated the common-law rule and require the court's permission before the prosecution may *nol pros* a case, *see* 3 C. TORCIA, WHARTON'S CRIMINAL PROCEDURE § 518 n.4–10 (12th ed. 1975), such is not the rule in New Hampshire. What was said well over a century ago is no less applicable today: "The power to enter a *nolle prosequi* exists in the prosecuting officer. . . . The court has no right to intefere [sic] in its exercise. They can only judge, of the effect of the act, when done, or, of the legal consequences, which may follow from it." *State v. Smith supra.*

■ The State concedes that when it *nol prosses* a case, it discharges the case, thus removing it from the court's consideration. *State v. Coolidge*, 109 N.H. 426, 427, 260 A.2d 563, 564 (1969). Nor does it disagree that when jeopardy attaches, the effect of its discharging a case is to bar reprosecution of that case. *See* R. MCNAMARA, 1 NEW HAMPSHIRE PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 497, at 325 (1980). Once a "jury is organized, and the trial commences, the [defendant], then, acquires new rights, which, the court will protect." *State v. Smith supra.* The State argues, however, that the *nolle prosequi* in this case, responding to the defendant's motion to dismiss, functioned more as a judicial dismissal than as a typical prosecutorial discharge. It invites us to carve out an exception which would require an after-the-fact examination of the motivation for the entry of the *nolle prosequi.* We decline the invitation.

■ Ironically, as pointed out in the State's brief, "had the prosecutor either joined in the motion, objected, or sat idly by and awaited the action of the trial court," a judicial dismissal, meeting the "manifest necessity" standard, was more probable than not. However, when the State *nol prossed* the indictment after jeopardy had attached, the case was unilaterally discharged; accordingly, the subsequent retrial of the defendant is constitutionally barred. N.H. CONST. pt. I, art. 16.

*Reversed.*

All concurred.