Rockingham
No. 90-287

## THE STATE OF NEW HAMPSHIRE

v.

## ANDREW ELLISON, JR.

November 7, 1991

2

*John P. Arnold*, attorney general (*Ann M. Rice*, assistant attorney general, on the brief, and *Tina L. Nadeau*, attorney, orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J.   The defendant was found guilty by a jury in the Superior Court (*McHugh*, J.) of two counts of aggravated felonious sexual assault, RSA 632-A:2, one count of second degree assault, RSA 631:2, and one count of criminal trespass, RSA 635:2. On appeal he argues that the trial court erred in denying his motion for a mistrial. For the reasons that follow, we affirm.

In the early morning of January 19, 1989, Laurie Ellison awoke to the sound of knocking at the door of her Portsmouth home. On answering the door she found her estranged husband, the defendant, against whom she had filed for divorce and had obtained a restraining order. The defendant forced his way in, argued with his wife, and told her he wanted to have sex with her. When she refused, he took a knife from a kitchen drawer and began pulling and cutting her clothes off. He struck her in the face and choked her in response to her attempts to fend off his attack. She gave up resisting when she saw that their small daughter was watching. Pushing her to the floor and holding the knife at her throat, the defendant had sexual intercourse with his wife. He then dragged her upstairs, threw her on a bed, and, while their three young children watched, had intercourse with her again, still hitting and choking her.

After the defendant left that morning, Mrs. Ellison went to her aunt's house and called the police to report the incident. When she was told that she would have to go to the police station to file a report, she hung up and went home. That evening Mrs. Ellison went to the hospital emergency room and reported that she had been assaulted. The on-duty physician observed that she had bruises over her eye and on her chest, a swollen nose, and cervical strain; an x-ray showed that her nose had been broken. When the doctor recommended that she submit to a rape evaluation, Mrs. Ellison declined. She then went to the police station to make a report and, after giving

a statement, was accompanied by an officer back to the hospital for a rape evaluation. The results of that evaluation showed a limited number of spermatozoa present on one vaginal smear.

The next afternoon the defendant, upon learning that the police had been looking for him, arrived at the police station and gave a statement following a *Miranda* waiver. He denied having been at his wife's home the day before, claiming that he had last had sexual intercourse with her the previous September. He gave another statement later that day in which he admitted being at the house the day before, but denied hitting his wife or having sexual intercourse with her. Acknowledging that he had grabbed her arms, he explained that her observable bruises were due to an anemic condition that caused her to bruise easily. In a third statement he gave to the police on the following day, the defendant admitted having had sex with his wife earlier in the week, claiming it had occurred four days before. He had gone to her house at her request, he stated, because she wanted to use his car. He also stated that the day after they had had sex, his wife told him that their one-year-old son, Maurice, had injured her nose by hitting her in the face with a vase.

The defendant claims that the trial court erred in denying his motion for a mistrial after a prosecution witness testified about a prior unrelated assault by the defendant on his wife. The other incident had occurred one year earlier and was the subject of a pending indictment. Prior to trial, the defendant had filed a motion *in limine* seeking to exclude any reference to the earlier assault and requesting the court to order the State to instruct its witnesses accordingly. The trial court had granted the motion.

During the direct examination of Portsmouth police officer Adam Price, the prosecutor inquired about the defendant's third statement to the police, and the following exchange occurred:

"[Prosecutor:] Andrew Ellison's statement to you was that Wednesday, some point in the evening when it was dark out that Laurie Ellison told him that Maurice had hit her in the face with a vase?

[Witness:] She had told him that, yes.

[Prosecutor:] She had told him that and that explained the injuries she had to her facial area?

[Witness:] Well, he explained also during the statement that he, prior to this incident, a year prior, he had fractured her nose —

Mr. Bisson:     Objection.

The Court:      That's sustained."

After several more questions on direct examination, an unrecorded bench conference was held. At the close of the evidence the court stated for the record that defense counsel had earlier moved for a mistrial, which had been denied because in the court's view "the problem was not uncurable," noting that the witness' answer had been nonresponsive and unexpected. After consulting with the defendant, defense counsel declined the court's offer to give a curative instruction and reiterated his motion for a mistrial, which was denied. His post-trial motion to reconsider the denial of his request for a mistrial was also denied. At the hearing on the motion, the trial judge restated his view that the offending testimony was not so prejudicial as to warrant a mistrial, and that a curative instruction could have been given if requested. He added that, having been watchful at the time for any reaction from the jury, he did not recall that any jurors had appeared to have heard or been impressed by the testimony.

■■■■■■  Prejudice is inherent in evidence of other, similar crimes committed by a defendant. *See State v. Woodbury*, 124 N.H. 218, 220, 469 A.2d 1302, 1304 (1983); *State v. LaBranche*, 118 N.H. 176, 178, 385 A.2d 108, 109 (1978). The motion *in limine* to exclude any evidence of the defendant's pending charge for another unrelated assault on his wife had been properly granted; "the purpose of excluding the evidence of [an]other physical assault[] was to avoid [its] potentially prejudicial effect." *State v. Killam*, 133 N.H. 458, 463, 578 A.2d 850, 853 (1990). It does not necessarily follow, however, that the introduction of this evidence caused sufficient prejudice to the defendant to require that the proceedings be stopped. "To justify a mistrial, prejudicial testimony must be more than inadmissible, it 'must constitute an irreparable injustice that cannot be cured by jury instructions.'" *State v. Hunter*, 132 N.H. 556, 561, 567 A.2d 564, 568 (1989) (quoting *State v. Lemire*, 130 N.H. 552, 555, 543 A.2d 425, 426 (1988)). Because of the trial court's optimal vantage point for measuring prejudicial effect, it is within its discretion to decide whether a mistrial or other remedial action is necessary. *State v. Killam*, 133 N.H. at 463, 578 A.2d at 853; *State v. Hunter*, 132 N.H. at 561, 567 A.2d at 568. Absent an abuse of that discretion, we will not overturn the trial court's decision.

The defendant argues that the testimony concerning his prior assault is on a par with the inadmissible evidence in *State v. Woodbury*

and *State v. LaBranche* that caused us in those cases to hold that a mistrial was the only appropriate remedy. He also contends that *LaBranche* articulated a rule, reaffirmed in *State v. Crosman*, 125 N.H. 527, 484 A.2d 1095 (1984), that a mistrial is required whenever evidence of another similar offense, specifically excluded by a pretrial order, comes in at trial. We disagree.

The defendant in *LaBranche* had been indicted for aggravated felonious sexual assault and attempted aggravated felonious sexual assault on his daughter on two separate occasions. Because of the potential for prejudice from trying both charges together, the indictments had been severed for trial. At the trial on the sexual assault indictment, when asked whether she had reported the alleged offense to the police, the victim responded, "'After the second time, yes.'" *LaBranche*, 118 N.H. at 178, 385 A.2d at 109. In addition, a police officer testifying about his encounter with the defendant stated, "'I then went into the second incident . . . and . . . advised him that he would be charged with two counts.'" *Id.* In deciding that the defendant had been irremediably prejudiced by these references, we observed, "Although neither witness specifically identified the pending charge, the record clearly disclosed that the jury could easily discern that the defendant was allegedly culpable for other instances of criminal conduct closely related to the charge before it." *Id.* at 179, 385 A.2d at 110.

In *Woodbury*, at the defendant's trial for armed robbery, a police officer testified that the defendant had stated to him, "'I don't know why you're charging me with armed robbery. I've been that route before. I've been charged with armed robbery before.'" *Woodbury*, 124 N.H. at 220, 469 A.2d at 1304. Relying on *LaBranche*, we concluded that a mistrial was required because the testimony, not admissible for any proper purpose, "explicitly revealed to the jury inadmissible evidence of an identical charge which had been previously filed against the defendant." *Id.* at 221, 469 A.2d at 1305.

■ At the heart of *LaBranche* and *Woodbury* is the unfairness, absent some exception to the general rule of exclusion of such evidence, of allowing the jury to hear that a defendant is putatively guilty of other criminal conduct similar to that for which he is on trial. "Prejudice results when the testimony of a witness conveys to a jury the fact of a defendant's prior *criminal offense." Woodbury*, 124 N.H. at 221, 469 A.2d at 1305 (emphasis added). Although, in this case, the defendant's alleged prior assault on his wife was, as in *LaBranche*, the subject of a pending indictment, the appropriate in-

quiry is whether that fact or the fact that the other incident was criminal in nature was unambiguously revealed to the jury. Officer Price's testimony was not of that character. He stated that the defendant had "explained" that "a year prior, he had fractured her nose." The defendant had given this "explanation" in the context of completely denying that he was guilty of any wrongdoing towards his wife. According to his statements to the police, his wife tended to bruise easily, and on this occasion had been accidentally injured by their son. Consistent with the defendant's obvious intention to provide an exculpatory account of this incident, a reasonable inference from the objectionable testimony was that the defendant sought to explain that an accident also had caused the prior fracture to his wife's nose. Unlike the testimony in *Woodbury* that "informed the jury of a prior criminal charge filed against the defendant," 124 N.H. at 221, 469 A.2d at 1304, the testimony here was, as the trial court found, ambiguous. Where the testimony is ambiguous, a defendant is not so substantially prejudiced that a mistrial is required. *See State v. Lemire*, 130 N.H. at 555, 543 A.2d at 427; *State v. Steele*, 125 N.H. 190, 192, 480 A.2d 80, 82 (1984) (testimony "not so suggestive of other criminal conduct" as to be incurable by limiting instructions, "considering the equivocal nature of the reference").

That the inadmissible testimony in this case was introduced in the face of a court order prohibiting it does not compel a different result. Contrary to the defendant's characterization of *LaBranche* and *Crosman*, we did not in those decisions announce a rule requiring a mistrial whenever a pretrial order excluding specific evidence is violated. In *Crosman*, relying on *LaBranche*, we observed that a reference to a prior armed robbery committed by the defendant, standing alone, would have been inadmissible because of its prejudicial impact and lack of probative value. We therefore noted that "[t]he original ruling *in limine* to exclude any such reference was clearly correct." *Crosman*, 125 N.H. at 530, 484 A.2d at 1097. Although we went on to hold in the particular circumstances that the defendant had opened the door to the otherwise inadmissible evidence, *id.* at 530–31, 484 A.2d at 1097–98, we did not mean to suggest that the defendant, but for his own actions at trial, would have automatically been entitled to a mistrial.

The trial court found that Officer Price's testimony was not a bad-faith attempt to introduce evidence of the defendant's prior assault, and the defendant, acknowledging that the testimony was

"blurted out," does not claim prosecutorial overreaching. Nor does the defendant claim that the court erred in failing to give a curative instruction, as none was requested. *See State v. Hunter*, 132 N.H. at 561, 567 A.2d at 568. We are satisfied that, on the trial record as a whole, the defendant was not so irreparably harmed by the inadmissible testimony as to have been entitled to a mistrial.

*Affirmed.*

All concurred.