Hillsborough
No. 92-179

### The State of New Hampshire

v.

### Jon Drew

November 4, 1993

*Jeffrey R. Howard*, attorney general (*John A. Curran*, assistant attorney general, on the brief, and *William H. Lyons*, senior assistant attorney general, orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord (on the brief and orally), for the defendant.

THAYER, J.   After a jury trial in Superior Court (*Groff*, J.), the defendant, Jon Drew, was convicted of operating a motor vehicle after certification as an habitual offender. RSA 262:23 (Supp. 1992). He appeals, arguing that double jeopardy barred his conviction for violating the habitual offender statute, and that the trial court erred in not granting a mistrial after the arresting officer testified about the defendant having been charged with driving while under the influence of intoxicating liquor (DWI) during the trial on the habitual offender charge. For the reasons that follow, we affirm.

On March 2, 1991, State Trooper Richard Blair stopped a vehicle that was being driven erratically. The defendant, the driver of the vehicle, failed a field sobriety test; he also told Trooper Blair that he had had four or five beers before driving. Trooper Blair arrested him for DWI. As the defendant was being booked at the Nashua Police Department, police learned that his license to drive in New Hampshire had been revoked due to his 1989 certification as an habitual offender. The defendant was convicted of DWI in the Nashua District Court. Prior to his superior court trial on the habitual offender charge, the court ruled that the DWI conviction would not be allowed into evidence, but that evidence of the defendant's intoxication at the time of the arrest would be allowed.

On direct examination, Trooper Blair testified that he had "conducted some field sobriety tests on the roadside and [the defendant]

was placed under arrest for driving while intoxicated, [and] brought to the Nashua P.D." The defendant did not object to this testimony. During cross-examination, defense counsel asked the court to direct the witness to produce his notes of the arrest. After Trooper Blair gave the requested documents to defense counsel, counsel noted that there were several sets of notes and reports relating to the case. Defense counsel pursued a line of questioning about the content of the different reports, and the following colloquy took place:

"Q  And you've put some additional things here that weren't in there originally, correct?

A  I don't believe so.

Q  Well, let me just show you this material about left wheels crossing the center line. Was this in there previously or have you added that?

A  This was taken off of the criminal report and put on to these notes because these are the ones I used on the stand last time.

Q  Right. But my question is[,] is this something that's been added to your — these were your original notes?

A  No. These were taken from my handwritten notes. These are discovery under district court rule which was given to you. The additional notes on here came from a criminal report.

Q  So this was not complete in and of itself?

A  Yes, it was.

Q  But you had to add some things to it?

A  From my recollection I did so I wouldn't have to take two reports to the stand.

Q  Well, let me just run through this one step at a time. There were notes before this, correct?

A  Yes.

Q  What happened to those notes?

A  Those notes were transcribed onto a criminal report and a discovery report, two different reports.

Q  What happened to those notes?

A  Those notes were destroyed.

Q  They weren't provided to us, were they?

A  Yes. They were transcribed onto the notes you have in your right hand.

Q  Exactly. Verbatim? Exactly verbatim?

A   They were a rough draft, and I took those rough drafts and chronologically put them in order onto a discovery report for you.

Q   So when you say "rough draft", you mean it was different from what I got, correct?

A   No. Everything, everything, I believe is included except for I said he was doing forty in a fifty zone. I put down that he was driving erratically.

Q   And this wasn't the last report either?

A   No.

Q   What happened after this one?

A   You have the next one in your left hand. That's a typewritten report. That goes to the county attorney.

Q   Okay. So this [report is] number three or number four?

A   That would have been probably number two or three. There's a criminal report bec[ause] he's an habitual offender. He was also charged with DWI. Because the DWI was appealed, we have to do a motor vehicle appeal report so the county attorney—"

At this point in the testimony, the prosecutor asked to approach the bench. Defense counsel moved for a mistrial. The court denied the motion and asked defense counsel if he wanted any kind of instruction to the jury. Defense counsel indicated that he did not think an instruction could cure the damage, and the court gave none at that time.

The State's next witness, Trooper Daniel Roche, had transported the defendant to Nashua District Court and had warned him of his *Miranda* rights. Trooper Roche testified that after the defendant indicated he understood those rights and agreed to talk, "[h]e stated he was arrested for DWI." The defendant did not object to this testimony. When Trooper Roche asked the defendant why he was driving, the defendant said "he had been drinking like eight or nine beers and that it was stupid to drive" and that "[his] friend was drunk and he needed to drive." The prosecutor again asked to approach the bench, where defense counsel renewed his objection based on double jeopardy grounds and was overruled. The judge informed counsel, however, that he would instruct the jury not to consider the DWI, and defendant's counsel replied, "That's fine." The judge then instructed the jury:

> "I'd like to make one thing clear to you, ladies and gentlemen of the jury. I think this is as good a time as any. You've

heard some testimony in this case that in addition to the charge before you there was also a charge against the defendant where he was arrested for driving while intoxicated. That fact is not to be considered by you in any way when you deliberate your verdict. It has no relevance to this case and is not a concern of yours whatsoever. You are to ignore that and not consider it in any way.

You may consider, however, the evidence of the state of sobriety or the condition of sobriety of the defend[an]t at the time of this incident as that may relate to his state of mind at the time that the acts that are complained of in this particular case were alleged to have been committed."

The defendant was convicted of violating the habitual offender statute and raises a double jeopardy claim on appeal. The defendant argues that because he engaged in a single act of driving a motor vehicle on March 2, 1991, his DWI and habitual offender convictions are based on the same evidence, and thereby violate his constitutional protections against double jeopardy. We decided the same issue of double jeopardy against the defendant in *State v. Brooks*, 137 N.H. 541, 629 A.2d 1347 (1993), and therefore will not address it here.

■ The defendant also contends that Trooper Blair's testimony on cross-examination, in violation of the court's ruling that the defendant's DWI conviction would not be allowed into evidence, was so prejudicial as to require a mistrial. The trial court's denial of a motion for mistrial will not be overturned absent an abuse of discretion. *State v. Lemire*, 130 N.H. 552, 554, 543 A.2d 425, 426 (1988).

■ Prejudice is inherent when the jury is exposed to evidence of other similar crimes committed by the defendant. *State v. Ellison*, 135 N.H. 1, 4, 599 A.2d 477, 479 (1991). Introduction of such evidence, however, does not automatically require a mistrial. *See id.* at 7, 599 A.2d at 481. To warrant a mistrial, the "remarks or the conduct must be more than merely inadmissible; they must constitute an irreparable injustice that cannot be cured by jury instructions." *Lemire*, 130 N.H. at 555, 543 A.2d at 426. We do not find that the defendant was so prejudiced as to require a mistrial in this case.

Defendant contends that the reference to the fact that he had been *charged* with DWI prejudiced his trial on the habitual offender charge. We disagree. Testimony was admitted without objection that the defendant had been arrested for DWI, and that he had admitted to the State troopers that he had "four or five" or as many as "eight or nine" beers before driving. Evidence of the actual charge result-

ing from the defendant's conduct and arrest was merely cumulative of this other evidence and thus not prejudicial. *See State v. Lemieux*, 136 N.H. 329, 331, 615 A.2d 635, 636 (1992) (erroneous admission of hearsay harmless where merely cumulative). To the extent that the defendant argues that this reference to the charge was indirect evidence of defendant's conviction for DWI, we similarly find that any resultant prejudice was mitigated by the other evidence of the defendant's state of intoxication and arrest, which evidence was admitted without objection. We fail to see how the indirect reference to the DWI conviction informed the jury of any criminal behavior of which they were not already aware.

■ Additionally, the degree of prejudice inherent in a reference to another charge may depend upon the similarity of the "other incident" to that for which the defendant is currently on trial. *See Ellison*, 135 N.H. at 4, 599 A.2d at 479 (prejudice inherent in evidence of other *similar* crimes); *State v. Woodbury*, 124 N.H. 218, 220, 469 A.2d 1302, 1304–05 (1983) (testimony explicitly revealed evidence of identical crime); *State v. LaBranch*, 118 N.H. 176, 179, 385 A.2d 108, 110 (1978) (evidence of closely related charge); *cf. Gordon v. United States*, 383 F.2d 936, 940 (D.C.Cir. 1967) (where prior conviction is same as offense charged, there results "inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time'"), *cert. denied*, 390 U.S. 1029 (1980). In this case, the offense charged, driving after certification as an habitual offender, differed significantly from a charge for driving while under the influence of an intoxicating liquor.

■ Moreover, the trial court, with the consent of the defendant, later instructed the jury that "there was also a charge against the defendant where he was arrested" for DWI, but that the DWI charge "is not to be considered by you in any way when you deliberate" and that it was irrelevant to the habitual offender charge. We presume that jury members follow the instructions provided by the court, *State v. Novosel*, 120 N.H. 176, 178, 412 A.2d 739, 740 (1980), and we have recognized that appropriate instructions can cure prejudice to the defendant. *See State v. Fowler*, 132 N.H. 540, 547, 567 A.2d 557, 561 (1989).

Accordingly, given both the circumstances surrounding the testimony complained of and the judge's curative instruction, we find no abuse of discretion in the denial of the defendant's motion for a mistrial.

*Affirmed.*

All concurred.