McManus v. Cheshire County, NH          CV-96-223-SD 11/24/97

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**


Patrick F. McManus

    v.                                      Civil No. 96-223-SD

Cheshire County, New Hampshire



**O R D E R**


In this civil rights action, plaintiff Patrick F. McManus claims that defendant Cheshire County, New Hampshire, terminated his employment without due process of law.  In addition, McManus claims that his termination by Cheshire County breached the employment contract and the state right-to-know laws, New Hampshire Revised Statutes Annotated (RSA) 91-A:3.


Facts

In January 1987 defendant Cheshire County hired plaintiff McManus as the Nursing Home Administrator and Superintendent of the Cheshire County Farm and Jail.  McManus reported directly to the Cheshire County Commissioners, who evaluated plaintiff's job performance yearly.  In 1992 the Commissioners began giving plaintiff negative evaluations and continued to do so for several years.

In early August 1995 the Commissioners met at a regularly

scheduled meeting and made a decision to seek plaintiff's removal from his position. Plaintiff was never notified of the Commissioners' intent to discuss his termination at the August meeting. Later in the month of August, the Commissioners requested plaintiff's resignation. He declined, and further requested that the Commissioners provide him with written notice. On August 25 the Commissioners complied with plaintiff's request, providing him with written notice explicating the grounds and providing that his termination would be effective one month later, on
September 25, 1995.

Plaintiff requested a hearing before the personnel committee, as was his right under state law as a tenured employee. After a two-day evidentiary hearing that began in December 1995, the personnel committee found that there was good cause for plaintiff's termination. Plaintiff appealed to the New Hampshire Supreme Court, which affirmed without opinion.

## Discussion

Plaintiff claims that defendant Cheshire County deprived him of property without due process of law by terminating his employment without first providing him an opportunity to be heard in defense of his job. "The Due Process Clause of the Fourteenth

2

Amendment 'provides that certain substantive rights--life, liberty, and property--cannot be deprived except pursuant to constitutionally adequate procedures.'" Silva v. University of N.H., 888 F. Supp. 293, 317 (D.N.H. 1994) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)). Property interests protected under the Due Process Clause are not created by the Constitution, but rather are defined by an independent source such as state law. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). RSA 28:10-a, I (1988) provides: "Any employee of a county institution who has served at least one year shall not be discharged, removed, or suspended from employment except for [cause]." The United States Supreme Court has held that state statutes that confer the right to continued employment except upon removal for cause create a constitutionally protected property interest. Loudermill, supra, 470 U.S. at 539. As a tenured employee under RSA 28:10-a, McManus's interest in his job constituted property protected under the Due Process Clause.

"An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Id. at 542 (internal quotations omitted). Under this principle, this is an easy case, despite extensive argumentation from both sides. The clear fact remains that McManus was denied any

opportunity to be heard in defense of his job until the formal hearing held pursuant to state law RSA 28:10-a on December 21, 1995, almost three months after his termination became effective on September 25, 1995. However, a post-deprivation hearing is not constitutionally adequate process by which to deprive a public employee of his job. Loudermill, supra, 470 U.S. at 542 (finding due process violation despite post-termination hearing because "an individual [must] be given an opportunity for a hearing *before* he is deprived of any significant property interest" (internal quotations omitted)). Since McManus was given no hearing before his termination, Cheshire County deprived him of his property interest in his job without due process of law.

The court disagrees with defendant that plaintiff's due process claim is precluded by collateral estoppel, a doctrine which prohibits relitigation of issues that were already litigated and resolved in a prior action. Cheshire County argues that the personnel committee's findings against McManus at the close of the December 21 hearing have preclusive effect on McManus's due process claim. However, the committee's findings were limited, as the committee noted that its "sole task is to determine whether good cause existed for the personnel action taken by the Commission in discharging Mr. McManus . . . ."

4

Decision of the Personnel Committee, Exhibit M attached to Defendant's Motion for Summary Judgment at 3. RSA 28:10-a grants the personnel committee limited authority to resolve the "just cause" issue, but does not grant general authority to decide all the claims an employee may have against the county. Thus the personnel committee's limited finding that Cheshire County had sufficient "just cause" to terminate McManus has no preclusive effect on the unrelated due process issue in this case of whether plaintiff was terminated through constitutionally sufficient procedures.

The defendant relies heavily on Meehan v. Town of East Lyme, 919 F. Supp. 80, 83 (D. Conn. 1996), which this court finds to be obviously distinguishable. Under Connecticut law, Meehan, a tenured public employee, appealed an adverse administrative ruling on the "just cause" issue to the Connecticut superior court, which had the authority to consider plaintiff's additional claim, raised on appeal, that his termination violated due process. After the superior court found against plaintiff on his due process claim, plaintiff raised the same due process claim in federal court under 42 U.S.C. § 1983. The federal district court dismissed the section 1983 claim on the ground of collateral estoppel. However, the case at hand is readily distinguishable from Meehan because there has been no prior finding on the due

5

process issue as there was in <u>Meehan</u>.

Even though McManus's procedural due process rights were violated by lack of a pretermination hearing, this court is not convinced McManus suffered any injury, which is an essential element of his section 1983 claim. <u>Carey v. Piphus</u>, 435 U.S. 247 (1978). Section 1983 was intended to provide a civil remedy to compensate persons for injuries caused by the deprivation of their constitutional rights. McManus can carry his burden of proving injury in one of two ways. First, he can establish that he would not have been terminated had a proper pretermination hearing been held. However, McManus will be collaterally estopped from denying that his termination was justified since that issue was already resolved in the December 21, 1995, hearing before the personnel committee and then again in the appeal before the New Hampshire Supreme Court.[1] Second, the United States Supreme Court has observed that the Due Process Clause not only safeguards against erroneous deprivations of property, but also guarantees "the 'feeling of just treatment' by the government." <u>Carey</u>, <u>supra</u>, 435 U.S. at 261 (quoting <u>Anti-Fascist</u>

----

[1]For this reason, plaintiff's motion to exclude evidence of the earlier decisions of the personnel committee and the New Hampshire Supreme Court is denied. Those decisions are relevant to the issue of plaintiff's injury. However, the court does agree that evidence that the county operations are running more profitably than when plaintiff was in charge is irrelevant.

Committee v. McGrath, 341 U.S. 123, 162 (1951) (Frankfurter, J., concurring)). The Court went on to add that even when a deprivation is ultimately justified, the citizen may nonetheless suffer mental and emotional distress from denial of the "feeling of just treatment." However, such mental and emotional distress cannot be presumed. Id. at 262. On the contrary, plaintiff must prove that he suffered distress from deficiencies in procedure rather than from the deprivation of property itself. Since neither party has briefed this issue, the court leaves it to the parties to file the necessary motions and supporting memoranda if they choose to do so.

McManus also claims that he was denied pretermination notice, which is an essential element of due process. At McManus's request, the Commissioners sent him written notice on August 25 explicating the grounds for his termination. Defendant's Motion for Summary Judgment, Exhibit F. Plaintiff argues that this August 25 notice came too late to constitute pretermination notice because the Commissioners had already terminated his employment at their regularly scheduled meeting in early August. However, plaintiff's argument misunderstands the term "termination," which denotes a formal severance of the employment relation. At the August meeting, the Commissioners simply decided to begin the process of terminating plaintiff, but

7

the August 25 notice specifically provided that plaintiff's termination would not be effective until September 25. Just as a decision to marry does not effect a formal marriage, and a decision to contract does not formally render one contractually bound, the Commissioners' August decision to terminate McManus did not effect a formal severance of the employment relation. Rather, plaintiff was not formally terminated until September 25, 1995, the date when the August notice given to plaintiff specifically stated that the termination would be effective. Since the August notice preceded the September termination of plaintiff's employment, Cheshire County gave plaintiff constitutionally sufficient pretermination notice.

Plaintiff's next due process claim alleges flaws in the December 21, 1995, hearing held before the personnel committee pursuant to RSA 28:10-a. Plaintiff claims that the personnel committee denied his requests for hearing and deposition subpoenas and "created a flawed hearing process in which the plaintiff had no ability to compel the attendance of witnesses he intended to call." Complaint ¶ 69. However, the Due Process Clause only guarantees a pretermination hearing and, even then, "something less than a full evidentiary hearing is sufficient prior to adverse administrative action." Loudermill, supra, 470 U.S. at 532. There is no due process right to a full evidentiary

8

hearing after the challenged deprivation.  Plaintiff's right to the post-termination hearing held in this case emanated from RSA 28:10-a, and his argument that the hearing was unlawful is a state law claim.

Likewise, plaintiff's claim that defendant failed to accord him progressive discipline prior to termination as promised in the Cheshire County Employee Handbook is also a state law claim. The question of what process is due to a tenured public employee before termination is a federal constitutional question.  Courts have never held that tenured employees are entitled to any process beyond notice and an opportunity to be heard. Loudermill, supra, 470 U.S. at 542 ("We have described the root requirement of the Due Process Clause as being that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest."  (Internal quotations omitted.))  Progressive discipline has not been held to be part of the process due tenured employees under the Due Process Clause.   States certainly may provide their employees procedural protections, such as progressive discipline, that go beyond the minimum set by the Constitution, but a claim that those additional procedural protections have been ignored is a state law claim.  See Voigt v. Savell, 70 F.3d 1552, 1563 (9th Cir. 1995) ("[Plaintiff] contends that the defendants failed to follow

9

the extensive procedures established by state law, such as constructive and progressive discipline. That claim must be presented to [a state] court.").

Next, plaintiff challenges the constitutionality of RSA 28:10-a, II, which provides:

> Any employee of a county institution who has served at last one year shall not be discharged, removed, or suspended from employment except for dishonesty, intoxication, immoral behavior or other misconduct, neglect of duty, negligence, willful insubordination, lack of cooperation, inefficiency, incapacity or unfitness to perform his duties, or for the good of the institution to which he is assigned . . . .

Essentially, plaintiff complains that "for the good of the institution" is an unconstitutionally vague basis for discharge, violative of substantive due process. Were this a criminal statute, pursuant to which the state asserted the right to deprive a citizen of liberty "for the good of the institution," there is no doubt the statute would violate due process. However, unlike liberty, property interests have no extralegal source, and "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Loudermill, supra, 470 U.S. at 538. The implication is that there are no standards by which to challenge the dimensions of property interests created by state law. Such standards could only come from a source outside of

10

state law and, according to the Court in Loudermill, such sources do not exist. Thus there are no standards to which plaintiff can appeal to support his claim that the dimensions of his property interest in his job are unconstitutionally vague.

Plaintiff's breach of contract claim is likewise meritless. Plaintiff claims that the Cheshire County Employee Handbook promised progressive discipline prior to termination, which he was denied. The Handbook provides that "[e]very employer may need at some time to administer discipline. Both unwarranted discipline and failure to discipline can adversely affect employee morale. While progressive discipline is usually employed, the specific disciplinary action may vary depending upon circumstances and nature of the offense." Defendant's Memorandum in Support of Motion for Summary Judgment at 14. The use of the word "may" unambiguously indicates that progressive discipline is discretionary, and under the plain meaning rule, Echo Consulting Servs. v. North Conway Bank, 140 N.H. 566, 569, 669 A.2d 227, 230 (1995), this understanding controls. Thus Cheshire County did not breach the employment contract by failing to accord McManus progressive discipline.

Alternatively, McManus claims that Cheshire County abused its discretion to accord progressive discipline in violation of the covenant of good faith and fair dealing, which has been

11

defined as follows:

> [U]nder an agreement that appears by word or silence to invest one party with a degree of discretion in performance sufficient to deprive another party of a substantial proportion of the agreement's value, the parties' intent to be bound by an enforceable contract raises an implied obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting.

Centronics Corp. v. Genicom Corp., 132 N.H. 133, 143 (1989).

Under Centronics, it is not all contractual discretion that is circumscribed by the covenant; rather, it is only that discretion which is sufficient to deprive the other party of a substantial portion of the agreement's value. See id. at 141 (providing examples of such discretion, like a promise to pay $200 per month for "such [personal] services as [the plaintiff] in his sole discretion, may render"). Cheshire County's discretion in according progressive discipline was not sufficient to deprive McManus of a substantial portion of the employment contract's value, which was the right to his job except upon termination for cause. Even if Cheshire County exercised its discretion against according McManus progressive discipline, he could still only be terminated for cause, guaranteeing to plaintiff a substantial portion of the employment contract's value, regardless of defendant's discretion to accord progressive discipline. The covenant of good faith and fair dealing was not intended to

12

protect solely collateral contract benefits, like the right to progressive discipline. See Carriage Hill Health Care v. Hayden, No. 96-101-SD, slip op. at 5-8 (D.N.H. Apr. 30, 1997) (Devine, J.). The covenant did not circumscribe defendant's discretion in according progressive discipline.

Last, plaintiff claims that defendants violated the state right-to-know law, RSA 91-A:3, under which "a governmental body may not move to go into executive session for the purpose of considering the termination of a public employee unless it has previously put that employee on notice that such a motion would be made." Johnson v. Nash, 135 N.H. 534, 538 (1992). According to McManus, Cheshire County violated this provision when the Commissioners considered McManus's termination at the regularly scheduled meeting in August without providing him notice. The court agrees. Cheshire County's contention that the August meeting of Commissioners was a chance meeting which did not trigger a duty to notify McManus is too frivolous to merit discussion.

Cheshire County contends that the right-to-know law does not authorize the remedies sought by plaintiff, which include back pay, front pay, employment benefits, and attorney's fees. At the outset, plaintiff is not entitled to attorney's fees because RSA 91-A:8, I, specifically limits attorney's fees to willful violations, and plaintiff has produced not one shred of evidence

13

in support of his claim that the Commissioners acted willfully. In addition, the clear language of the statute would appear to preclude the other remedies sought by plaintiff. Under RSA 91-A:8, the "Remedies" section of the right-to-know law, no provision is made for traditional compensatory damages such as front pay, back pay, and employment benefits. Nonetheless, in Nash, a case directly on point, the New Hampshire Supreme Court upheld a superior court order that "reinstated plaintiff to his post *with back pay* and awarded him attorney fees." Id. at 535 (emphasis added). This indicates that compensatory damages are recoverable, even though the statute does not specifically provide for such damages.

## Conclusion

For the foregoing reasons, defendant's motion for summary judgment is granted as to all counts except Count VII and Count III, to the extent that it alleges failure to provide a pretermination hearing.

14

Plaintiff's motion in limine is denied as to evidence of prior rulings and granted as to evidence of subsequent operations of the county.

**SO ORDERED.**

_____
Shane Devine, Senior Judge
United States District Court

November 25, 1997

cc:    Jonathan S. Springer, Esq.
       Donald E. Gardner, Esq.
       Kathleen C. Peahl, Esq.
       Attorney General - NH