Strafford
No. 98-302

THE STATE OF NEW HAMPSHIRE

v.

WILLIAM PANDOLFI

December 14, 2000

*Philip T. McLaughlin*, attorney general (*John C. Kissinger*, senior assistant attorney general, on the brief, and *Ann M. Rice*, assistant attorney general, orally) for the State.

*Behzad Mirhashem*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BRODERICK, J. The defendant, William Pandolfi, was convicted by a jury on one count of aggravated felonious sexual assault, *see* RSA 632-A:2, I (1986) (amended 1992), and two counts of misdemeanor sexual assault, *see* RSA 632-A:4 (1996). On appeal, he argues that the Trial Court (*Fauver*, J.) erred when it: (1) ruled that he opened the door to testimony that a witness failed to cooperate with the police because she was afraid of him; (2) denied his motion for mistrial after the witness testified beyond the boundaries established by the court; and (3) declined to conduct an *in camera* review of the victim's presentence investigation report and counseling records. We affirm in part, reverse in part, and remand.

I

The following evidence was adduced at trial. In 1989, the fourteen-year-old victim frequently visited her sister, Brenda Nunn. Nunn lived in Dover with the defendant, their two children, and her child from an earlier relationship. The victim often babysat for Nunn's children. On one occasion, while babysitting, the victim was awakened by the defendant, who was attempting to rub her breasts and thighs. She later discussed this event with her sister, who did not believe her.

At the end of January, Nunn was hospitalized and the victim agreed to care for the children. On her first night at Nunn's home, the victim was awakened by the defendant, who was touching her breasts, and attempting to insert his fingers inside her vagina. She screamed and ran into the bathroom, where she remained for approximately two hours. On the third night of her stay, the victim was again awakened by the defendant who was tying her hands behind her back. He rolled the victim onto her back, struck her head and face, and placed a piece of duct tape over her mouth to silence her screaming. In the course of the ensuing struggle, he cut the victim's chest with a razor and sexually assaulted her.

The victim did not tell anyone about the assaults until 1996, when she confided in her boyfriend. On his advice, she reported the assaults to the police. The defendant was subsequently charged with several counts of sexual assault. After his first trial ended in a mistrial, he was retried and convicted on one count of aggravated felonious sexual assault, *see* RSA 632-A:2, and two counts of misdemeanor sexual assault, *see* RSA 632-A:4. This appeal followed.

## II

The defendant argues that the trial court erred when it ruled that he opened the door to testimony that Nunn did not cooperate with the police investigation because she was afraid of him. He also contends that the trial court erred in denying his motion for mistrial because Nunn's testimony went beyond the boundaries established by the court and created prejudice that could not be eliminated by a curative instruction.

## A

During the State's direct examination of the victim, she acknowledged that when she reported the assaults to the police she could not recall the exact dates they occurred but remembered that they took place while her sister was hospitalized beginning in late January 1989. She testified that the police made several attempts to obtain Nunn's medical records to confirm the dates of her hospitalization in order to identify the dates the victim stayed at her home and was assaulted. She also testified that Nunn did not believe that the defendant had assaulted her. On cross-examination, the victim acknowledged that in police interviews, she said the assaults occurred during the summer, which was inconsistent with the dates of Nunn's hospitalization.

During the State's direct examination of Nunn, the following colloquy occurred:

Q. When — Brenda, were you contacted at some point in 1996 by the Dover Police Department?

A. Yes, I was.

Q. And you were contacted about their investigation involving this case?

A. Right.

Q. Did you cooperate with the police department?

Before Nunn answered, the defendant objected and argued that the State intended to elicit testimony that Nunn did not cooperate with the police investigation because she was afraid of him. The defendant asserted that such testimony was irrelevant and highly prejudicial, and that Nunn had always been willing to sign a release to allow the police to review her medical records.

The State countered that the testimony was necessary to rebut a misleading impression created by the victim that Nunn failed to

cooperate with the police because she did not believe her. It argued that during the defendant's cross-examination of the victim, he opened the door to Nunn's proposed testimony by emphasizing the victim's erroneous recollection of the dates of the assaults.

The trial court determined that the challenged testimony was relevant, and that its probative value outweighed its prejudicial effect, "in part, because the defense . . . opened the door [by] suggesting that the [victim] was all mixed up on the dates." The court ruled that Nunn could "testify only that she was afraid of the defendant and that's why she wasn't cooperating," and precluded her from explaining "*how* she was afraid." (Emphasis added.) Thereafter, the State continued its questioning:

Q. [W]hen the police first contacted you, did you cooperate with them?

A. No, I didn't.

Q. And why didn't you want to cooperate with the police?

A. Because I didn't want any part of this.

Q. And why didn't you want any part of this?

A. Because I'm scared to death of [the defendant]. He knows where I live.

The defendant objected and moved for a mistrial. While the trial court acknowledged that Nunn's testimony exceeded the scope of its prior ruling, it denied the defendant's motion. It ruled that the defense opened the door to "this line of questioning by raising the issue of delay in pinpointing the time of the alleged assault," and that the resulting prejudice from the challenged testimony did not outweigh its probative value. The trial court gave the jury a curative instruction:

I want to give you a specific instruction and I want you to make sure that you follow this instruction. At the end of the day yesterday this witness testified as to her feelings about the defendant, and I'm instructing you to disregard and ignore for all purposes that statement. There are times during any trial when a witness says something that is not anticipated before the parties have an opportunity to object. This is one of those times. This witness's personal feelings about this defendant have no bearing whatsoever on his guilt or innocence of the charges that are before you. It has absolutely nothing to do with this case. I'm instruct-

ing you now that you cannot consider her feelings toward this defendant in any way in your deliberation of this case.

This instruction apparently was crafted in large part by the defendant, who does not challenge its substance on appeal.

## B

At the outset, we observe that we need not decide whether the trial court erred in ruling that the defendant opened the door to Nunn's testimony that she did not cooperate with the police because she was afraid of the defendant. The proposed testimony sanctioned by the court was never introduced. As the trial court observed, Nunn's actual testimony differed significantly from the proposed testimony which it had ruled admissible. Rather than refer to her generic fear of the defendant without implying its basis, Nunn's testimony that she was "scared to death" of him and that he "knew where [she] lived" conveyed a fear that the defendant was capable of violence. The trial court specifically foreclosed such testimony. Therefore, the appropriate inquiry on appeal is whether the trial court erred in denying the defendant's motion for a mistrial.

## C

A mistrial based on the introduction of inadmissible evidence is warranted only when the challenged evidence causes "irreparable injustice that cannot be cured by jury instructions." *State v. Kerwin*, 144 N.H. 357, 358-59, 742 A.2d 527, 528 (1999) (quotation omitted). In this context, when deciding whether a defendant suffered irreparable injustice, we examine whether the inadmissible testimony unambiguously conveyed to the jury that the defendant had committed an act which was criminal in nature. *State v. Ellison*, 135 N.H. 1, 5-6, 599 A.2d 477, 480 (1991). The justification for a mistrial increases when the prior act identified is similar to the charged crime. *See State v. Drew*, 137 N.H. 644, 649, 633 A.2d 108, 111 (1993). Because the trial court has the "optimal vantage point for measuring prejudicial effect," we will not overturn its decision on "whether a mistrial or other remedial action is necessary" absent an abuse of discretion. *Ellison*, 135 N.H. at 4, 599 A.2d at 480 (citations omitted).

On the facts presented here, we conclude that the trial court did not abuse its discretion by denying the defendant's motion for mistrial and providing a curative instruction. The defendant argues that the "inevitable inference" to be drawn from Nunn's testimony is that she "knew he was capable of breaking into her house and

hurting her." Nunn, however, stated that she was "scared to death" of the defendant and that he "knew where [she] lived." She related only her fear that the defendant was capable of violence and did not identify conduct which formed the basis of her fear nor unambiguously convey that he had previously engaged in criminal conduct. *See id.* at 5-6, 599 A.2d at 480 (testimony in assault case that defendant fractured victim's nose on prior occasion was ambiguous because prior event could have been viewed as an accident in context of defense theory and witness's testimony); *State v. Sammataro*, 135 N.H. 579, 583, 607 A.2d 135, 137 (1992) (witness tampering case in which whether defense witness was afraid of what would happen to her if she testified was ambiguous because jury could have understood that witness was fearful of impact on her relationship with defendant if she failed to continue to lie for him). Therefore, we conclude that Nunn's testimony did not warrant a mistrial.

■ Moreover, the trial court's prompt curative instruction eliminated any potential prejudice caused by Nunn's testimony. The trial court provided an instruction crafted in large part by the defendant which clearly advised the jury to disregard the challenged testimony for all purposes. The defendant's contention that any curative instruction would have been inadequate to remedy the prejudicial impact of Nunn's testimony lacks merit. This is not "one of those extraordinary cases where the trial court cannot unring a bell once it has been rung." *Kerwin*, 144 N.H. at 360-61, 742 A.2d at 530. Given the ambiguous nature of the testimony and its failure to identify any prior criminal conduct of the defendant, we conclude that the trial court properly exercised its broad discretion by denying the defendant's motion for a mistrial and providing a curative instruction.

## III

Finally, we turn to the defendant's argument that the trial court should have conducted an *in camera* review of the victim's counseling records and her presentence investigation report (PSI) related to her conviction for a driving offense. He argues that the court's refusal to conduct an *in camera* review violated his due process rights under Part I, Article 15 of the State Constitution and the Fourteenth Amendment of the United States Constitution. We address the defendant's argument under only the State Constitution "because [it] provides at least as much protection to criminal defendants in this area as does the [Federal Constitution]." *State v. Hoag*, 145 N.H. 47, 48, 749 A.2d 331, 332 (2000).

Less than three weeks after the victim reported the assaults to the police, she was convicted of driving after suspension, a misdemeanor. *See* RSA 263:64 (1993) (amended 1993, 1994, 1997, 1999). The district court requested a PSI, *see* RSA 651:4, I (1996), and subsequently ordered the victim to serve a one year, deferred sentence in the house of correction, and two years of probation, provided she continued with counseling. Prior to trial, the defendant requested that the superior court conduct an *in camera* review of both the victim's counseling records and the PSI. He sought to discover any statements in the records about the charged assaults, the type of medication the victim had taken, and the nature of her underlying clinical diagnosis. The trial court denied the motion. We need not separately address the defendant's argument that the trial court erroneously denied his *in camera* review request brought prior to his first trial because that motion was incorporated into the motion he brought before his second trial.

■ "[I]n order to trigger an *in camera* review of confidential or privileged records, the defendant must establish a reasonable probability that the records contain information that is material and relevant to his defense." *State v. Gagne*, 136 N.H. 101, 105, 612 A.2d 899, 901 (1992). To meet this threshold requirement, the defendant must present "a plausible theory of relevance and materiality sufficient to justify review of [otherwise] protected documents." *State v. Graham*, 142 N.H. 357, 363, 702 A.2d 322, 325 (1997).

With respect to information about the charged sexual assaults, the defendant argues that the presence or absence of the victim's allegations in the requested records is relevant to her credibility. The defendant contends that there is a reasonable probability that the records contain the information sought because of their temporal proximity to the victim's first report of the assaults to the police, and because PSI interviewers often inquire about past sexual abuse.

■ The PSI at issue was generated in connection with the victim's conviction for driving after license suspension, an event completely unrelated to the charged assaults. While the scope of a PSI may be broad, *see State v. Tufts*, 136 N.H. 517, 520, 618 A.2d 818, 820 (1992), we cannot envision, absent raw speculation, how a PSI for a driving offense would concern itself with the victim's past sexual assaults, no matter how little time elapsed between the investigation and the victim's first report to the police. The defendant's assertion that it is common for a PSI interviewer to inquire about sexual assaults is unsubstantiated on the record before us. Likewise, the defendant offers no support for the proposition that temporal proximity,

standing alone, justifies an *in camera* review of privileged counseling records. Therefore, we conclude that the trial court did not abuse its discretion in denying the defendant's request.

With respect to the victim's medication and underlying clinical diagnosis, the defendant argues that such information is pertinent because during the first trial the victim explained her confusion about the dates of the assaults on the basis that she took medication which obscured her memory. The defendant contends that he is entitled to the requested information to effectively cross-examine the victim on her memory and perception. He further asserts that he should be permitted to impeach the victim's credibility if her claim that she took memory-impairing medication proved untruthful.

■ We conclude that with respect to the victim's medication, the defendant adequately offered "some specific concern, based on more than bare conjecture, that, in reasonable probability, will be explained by information in [the victim's confidential records]." *State v. Locke*, 139 N.H. 741, 745, 663 A.2d 602, 605 (1995) (quotation omitted). Because the victim relied on her medication to explain her memory difficulties, the defendant is entitled to know the type of medication she took, if any. We conclude that there is a reasonable probability that her PSI and counseling records would reference her medication. We are not persuaded, however, that the victim's reliance on her medication to explain her inaccurate recall justifies disclosure of her underlying clinical diagnosis, and the defendant offers no argument explaining the nexus between the two. Accordingly, we conclude that the trial court properly denied the defendant's request for *in camera* review to disclose the victim's clinical diagnosis but abused its discretion with respect to an *in camera* review to discover the victim's medication. Upon remand, should the trial court discover evidence "that would have been essential and reasonably necessary to the defense at trial . . . [it] should order a new trial unless it finds that the error of not admitting the evidence . . . was harmless beyond a reasonable doubt." *Hoag*, 145 N.H. at 50, 749 A.2d at 333 (quotation omitted).

Any remaining issues raised in the notice of appeal but not briefed are deemed waived. *See id.* at 52, 749 A.2d at 335.

*Affirmed in part; reversed in part; remanded.*

JOHNSON, J., sat for oral argument but retired prior to the final vote; THAYER, J., sat for oral argument but resigned prior to the final vote; BROCK, C.J., and NADEAU and DALIANIS, JJ., concurred; HORTON, J., retired, specially assigned under RSA 490:3,

concurred; NADEAU and DALIANIS, JJ., took part in the final vote by consent of the parties.