Nixon v. Bosler, et al.          CV-00-424-M   07/13/01
                UNITED STATES DISTRICT COURT

                  DISTRICT OF NEW HAMPSHIRE


Dennis W. Nixon,
d/b/a R & D Associates,
        Plaintiff

        v.                                Civil No. 00-424-M
                                          Opinion No. 2001 DNH 125
Charles W. Bosler, Jr.,
Services and Technology Group, Inc.,
and Risk Services & Technology, Inc.,
        Defendants


                        **O R D E R**


        Dennis Nixon, d/b/a R & D Associates, brings this suit

against Charles Bosler, Services and Technology Group, Inc.

("STG"), and Risk Services & Technology, Inc. ("RST"), seeking

damages for defendants' alleged copyright violations and breach

contract.  Specifically, Nixon claims to have developed a

computer program known as "RiskTrak" and incorporated into its

code five libraries as to which he holds registered copyrights.

He says defendants unlawfully distributed the RiskTrak software

without paying him agreed-upon royalties and, later, after he

revoked an oral license to use his copyrighted works.

Defendants deny any wrongdoing, claim to have paid Nixon all royalties to which he is entitled, and have filed two counterclaims. In their first counterclaim, defendants seek a judicial declaration of ownership of the RiskTrak software, an accounting of plaintiff's revenues, if any, derived from the sale or distribution of that software, and a declaration of the sums, if any, to which they are entitled as royalty payments. In their second counterclaim, defendants seek damages for Nixon's alleged breach of contract and/or breach of fiduciary duty. Pending before the court is Nixon's motion to dismiss defendants' counterclaims. See Fed. R. Civ. P. 12(b)(6).

## Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In considering a motion to dismiss, the court must accept as true the facts alleged in the complaint and construe all reasonable inferences in favor of the non-moving party. See Bessette v. Avco Financial Services, Inc., 230 F.3d

2

439, 443 (1st Cir. 2000), <u>cert.</u> <u>denied</u>, 121 S.Ct. 2016 (2001).

<u>See also</u> <u>The Dartmouth Review v. Dartmouth College</u>, 889 F.2d 13,

15 (1st Cir. 1989).  Dismissal is appropriate only if "it clearly

appears, according to the facts alleged, that the plaintiff

cannot recover on any viable theory."  <u>Langadinos v. American</u>

<u>Airlines, Inc.</u>, 199 F.3d 68, 69 (1st Cir. 2000).

## Background

Defendants claim that prior to 1996, Charles Bosler

(president of STG) began developing the RiskTrak software.  In

1996, defendants say STG employed Nixon for the purpose of

assisting Bosler in the development of the source code for

RiskTrak.  The parties seem to agree that they entered into some

sort of contractual relationship, which included a licensing

agreement concerning copyrighted works owned by Nixon, but they

disagree as to the terms and duration of that agreement.  It does

not appear that any aspect of that agreement was reduced to

writing.

Defendants claim that during much of his work on the

program, Nixon was "essentially taking dictation from Bosler."

3

Answer and Counterclaims at para. 52. Defendants also say that Bosler contributed significantly to the creation of RiskTrak's source code and the refinement of "five development tools" that Nixon used during the course of his work on RiskTrak (although it is unclear, it appears that defendants are referring to what Nixon calls his five copyrighted "libraries").

The parties' relationship terminated at some point in 1999. As a result of that relationship, however, defendants claim to be co-authors of the "five development tools purportedly owned" by Nixon, as well as the RiskTrak program itself. Answer and Counterclaims at para. 55. At a minimum, say defendants, Nixon's oral agreement to allow defendants to use his copyrighted works in the program in consideration for royalty payments of 10 percent of gross sales constituted an irrevocable, non-exclusive license. They claim to have paid Nixon all sums due under that licensing agreement and say that his efforts to unilaterally terminate the agreement were unlawful. Defendants also claim Nixon breached the terms of the parties' agreement when he refused to deliver the latest version of the program and

4

attempted to extract greater financial concessions from them as a pre-condition to turning it over.

Finally, defendants say that Nixon, as their agent, breached his fiduciary obligations to them when, after refusing to honor his obligations under the parties' contract, he sought to sell the RiskTrak program directly to potential customers of defendants.

In response, Nixon claims that he is the registered owner of the five copyrighted libraries or development tools that have been (apparently) incorporated into the RiskTrak program. He also says the license he provided to defendants (authorizing them to use those libraries and the code he developed for RiskTrak) was revocable at will. And, since he claims to have revoked that license, he says defendants cannot, as a matter of law, maintain a claim for declaratory judgment and an accounting. As to defendants' breach of contract/fiduciary duty claim, Nixon says he terminated his oral contract with defendants and, therefore, cannot successfully be sued for breach of contract. His motion

5

to dismiss is, however, silent as to defendants' claim that he breached certain fiduciary obligations owed to them.

## Discussion

As noted above, the parties agree that they entered into an oral contractual relationship governing the development, use, and sale of the RiskTrak software. Parties can enter into oral, non-exclusive licensing agreements. See Lulirama Ltd. v. Axcess Broadcast Services, Inc., 128 F.3d 872, 879 (5th Cir. 1997); I.A.E., Inc. v. Shaver, 74 F.3d 768, 775-76 (7th Cir. 1996). Plainly, however, the parties disagree as to the term of that agreement, the circumstances under which it might be terminated, and a substantial number of its material provisions.

As to defendants' first counterclaim, Nixon says they cannot maintain a copyright infringement action against him with regard to his own copyrighted libraries. That may be so. However, defendants maintain that because Bosler substantially assisted in the modification and refinement of those libraries he and/or the remaining defendants are "joint authors" of those substantially re-worked libraries. That is to say, defendants appear to claim

6

that the libraries, in their current form, constitute a "joint work," as that term is defined in 17 U.S.C. § 101 ("A 'joint work' is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole.").  As the Court of Appeals for the Second Circuit has observed:

> Joint authorship entitles the co-authors to equal undivided interests in the whole work - in other words, each joint author has the right to use or to license the work as he or she wishes, subject only to the obligation to account to the other joint owner for any profits that are made.

Thompson v. Larson, 147 F.3d 195, 199 (2d Cir. 1998).  Consequently, it would seem that if defendants are joint authors of the RiskTrak program and/or the five libraries incorporated into that program, Nixon was not entitled to "revoke" his licensing agreement (at least with regard to those portions of the agreement that related to works as to which defendants were joint authors).  As to those aspects of the program as to which defendants are joint authors, it would appear that they did not need any "license" from Nixon; their right to use such work flows from their status as joint authors.

7

What defendants seek is a judicial declaration as to their rights, if any, in the various components of RiskTrak and, if appropriate, an accounting from Nixon. If they are, as they claim, "joint authors" of that work, they are plainly entitled to such relief. Thus, on the facts alleged by defendants, the court cannot conclude that they have failed to state a viable, cognizable claim for declaratory judgment as to the parties' respective rights in and to the RiskTrak program, its source code, and the integrated libraries. Nixon's motion to dismiss defendants' first counterclaim is, therefore, denied.

Nixon's motion to dismiss defendants' second counterclaim must likewise be denied. If the court assumes, as it must, that defendants' allegations are true and Nixon was acting as an agent of defendants when he "spoke with [potential customers of defendants] in an attempt to sell product under his name and obtain the opportunities for such sales for his own benefit," Answer and Counterclaims at para. 61, they have adequately alleged the essential elements of a viable claim for breach of contract and/or breach of fiduciary duty. See, e.g., Reinhold v.

Mallery, 135 N.H. 31, 34 (1991) (discussing several of the duties owed by an agent to his or her principal).

To be sure, Nixon claims that defendants have failed to state a viable claim and, as a matter of law, cannot prevail on a breach of contract/fiduciary duty claim. And, in support of that position, he says:

> [T]here can be no dispute that Plaintiff was at liberty to terminate [the] agreement with Defendants at any time. If he was free to terminate the agreement, he must also have been free to attempt to renegotiate its terms. . . . Accordingly, Plaintiff's attempt to modify and his ultimate termination of the verbal agreement cannot constitute a breach of contract and Defendants' Second Counterclaim must be dismissed.

Plaintiff's motion to dismiss counterclaims at 4. The court disagrees. As noted above, defendants deny that Nixon was authorized to terminate the agreement at any time. And if, as defendants' allege, Nixon wrongfully terminated that agreement, or wrongfully sought to extort concessions from defendants in an effort to modify the terms of that contract, or wrongfully sought to steal potential customers away from defendants during the course of his agency relationship with them, defendants would likely be entitled to damages.

9

## Conclusion

For the foregoing reasons, plaintiff's motion to dismiss defendants' counterclaims (document no. 12) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 13, 2001

cc:  Kathleen C. Peahl, Esq.
     Arnold Rosenblatt, Esq.