Davidson v. State of NH        CV-97-589-PB  04/28/99

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Craig S. Davidson

v.                                     Civil No. C-97-589

The State of New Hampshire


MEMORANDUM AND ORDER


Craig Davidson entered a plea agreement with state prosecutors and pleaded guilty to three counts of kidnapping with the purpose to terrorize, one count of conspiracy to commit kidnapping, and one count of burglary.  He was sentenced to a prison term of 18-36 years with 5 years of the minimum and 10 years of the maximum suspended upon good behavior.  Approximately two years after he was sentenced, Davidson filed a motion with the New Hampshire Superior Court seeking to have his sentence reduced.  The Superior court denied Davidson's request and the New Hampshire Supreme Court rejected his appeal.

Davidson argues in his federal habeas corpus petition that his convictions must be vacated because state prosecutors breached their plea agreement with him by: (1) recommending a sentence in excess of the sentence specified in the agreement; (2) disclosing a statement he gave to the police to a co-

defendant in violation of the agreement; and (3) failing to properly dispose of charges that the state agreed to dismiss as a part of the agreement. He also argues that he is entitled to habeas corpus relief because he was denied his right to due process before and during the hearing on his sentence reduction motion. I reject his arguments and dismiss Davidson's petition.


## I.  BACKGROUND

At approximately 2:15 a.m. on July 18, 1993, Davidson, his wife, Gretchen Davidson, and her friend Chandra Chowanec arrived at the home of Mary Ellen and David McDuffee in Gilford, New Hampshire. They parked Chowanec's automobile two driveways away from the residence, donned black "ninja" clothing, night vision equipment, and radio headsets, and entered the McDuffee residence without invitation. Once inside, Craig Davidson used a stun gun on David McDuffee, Gretchen Davidson used a stun gun on Mary Ellen McDuffee, and Chowanec used a stun gun on Scott McDuffee. The Davidsons and Chowanec carefully devised and executed this plan with the purpose of confining and terrorizing the McDuffees. The co-conspirators met with more resistence than expected, however, and eventually, the Davidsons fled the residence to escape apprehension. Chowanec was captured by the McDuffees

-2-

inside the residence.  See Tr. of Plea Hr'g, pp. 19-21.

Davidson pleaded guilty on January 11, 1994 to three counts of attempted kidnapping with the purpose to terrorize; one count of conspiracy to commit kidnapping; and one count of burglary. See id. at 2-8; 26-29.  In exchange for these guilty pleas, the state agreed to dismiss three counts of attempted murder and conspiracy to commit murder; one count of conspiracy to commit kidnapping with the purpose to murder; one count of burglary, and two counts of criminal use of an electronic weapon.  See id. at 2-8.  The State also agreed to recommend prison sentences which, in total, would not exceed a minimum of 18 years and a maximum of 40 years.  Davidson agreed to argue for sentences totaling no less than five years and no more than 15 years.  See id. at 22. At the plea hearing, the court directed a probation officer to conduct a presentence investigation and submit a report to the court for use at the sentencing hearing.  See id. at 30.

The plea agreement required Davidson to "give the State of New Hampshire a complete statement outlining his participation in the planning, facilitating, and execution of the events that transpired at the McDuffee residence on July 18, 1993."  Letter from Ramsdell to Barnes of 1/11/94.  In a letter setting out the terms of the plea agreement, one of the prosecutors made the

following representation regarding the potential disclosure of Davidson's sworn statement:

> Finally, we have one issue that may not have been addressed as fully yesterday as it should have been. That is, the discoverability of [Davidson's] statement by his wife or her co-defendant. A truthful, inculpatory statement should be shielded from discovery [by co-defendants Chandra Chowanec and Gretchen Davidson] by our work product privilege . . . However, if [the Petitioner's] statement can be deemed exculpatory for either his wife or Chandra Chowanec then . . . we will be obligated to disclose the contents of the statement to their attorneys.

Id. The prosecutor also requested that defense counsel notify him immediately if any of the agreement's terms were inconsistent with his understanding of the agreement. Defense counsel did not challenge the prosecutor's representations.

Davidson provided the sworn statement prior to entering his plea on January 11, 1994. On or about January 14, 1994, as expected, co-defendant Chowanec's counsel filed a motion to discover Davidson's statement. After determining that the statement contained potentially exculpatory material as defined in Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), the prosecutors released a copy of the statement to Chowanec's counsel. Davidson's counsel was simultaneously notified of the statement's release on January 21, 1994, but failed to offer any objection to the disclosure.

-4-

Upon receipt of Davidson's statement, Chowanec moved for a hearing to determine whether Davidson would have to testify at her upcoming trial. At that February 4, 1994, hearing, Davidson invoked his right against self-incrimination. See Tr. of "Richards Hearing" May 13, 1994 at 3. Chowanec then filed a motion to have Davidson immunized pursuant to N.H. Rev. Stat. Ann. § 516:34 in order to elicit his testimony as a defense witness. The state objected, claiming that Davidson's statement was neither "directly exculpatory," nor at "highly material variance" from its evidence against Chowanec, and thus did not satisfy the immunity requirements established in State v. Farrow, 118 N.H. 296 (1978), and State v. Monsalve, 133 N.H. 268 (1990). A copy of Davidson's statement was furnished to the court, and after a second hearing and a review of the statement, the court concluded that Davidson should be granted immunity because his testimony "would present a highly material variance from the State's evidence . . . ." Order, May 16, 1994. Although a copy of the court's order was furnished to Davidson's counsel, he did not object to the immunity order or otherwise challenge the court's conclusion that his statement was exculpatory to Chowanec. Davidson did not testify at Chowanec's trial.

At Davidson's sentencing hearing on June 22, 1994, the prosecutors recommended a sentence of 22-1/2 to 45 years, with 4-1/2 years of the minimum and 5 years of the maximum suspended. The probation officer assigned to the case recommended a higher sentence than the prosecutors agreed to recommend. The court, however, sentenced Davidson to a total of only 18-36 years, with 5 years of the minimum and 10 years of the maximum suspended. See Tr. of Sentencing Hr'g pp. 52-55.

Two years later, on June 20, 1996, Davidson, acting *pro se*, filed a motion for sentence reduction in superior court pursuant to N.H. Rev. Stat. Ann. § 651:20. The state objected. New Hampshire State Prison Warden Michael Cunningham filed a summary of Davidson's activities, and despite noting that Davidson had "done well to date," he concluded with the statement: "I do not recommend a sentence modification."

The court held a sentence reduction hearing on November 15, 1996. In the five months between his petition for sentence reduction and the hearing, Davidson filed at least eight other pleadings, including five separate motions for injunctive relief, a motion for summary judgment, a motion for compensatory damages, and a motion for punitive damages. These pleadings raised two clear claims: (1) that the state violated the terms of the plea

agreement by releasing a copy of his statement to Chowanec without first seeking a judicial determination that the statement contained exculpatory material; and (2) that the state violated the plea agreement by sending copies of Davidson's dismissed indictments to the prison system. Relying on these two claims, Davidson asked the court to (a) vacate the plea agreement and order his immediate and unconditional release from custody; (b) issue a cease-and-desist order prohibiting the state from maintaining copies of the dismissed indictments in his prison file; (c) issue contempt citations and institute disciplinary actions against then-Attorney General Jeffrey Howard and the attorneys who prosecuted the case; and (d) order the expungement of his criminal record. The state objected, asserting, *inter alia*, that Davidson's claims exceeded the proper scope of a sentence reduction hearing.

At the hearing, the state renewed its objection to the court's consideration of any motion other than the request for sentence reduction. In light of Davidson's *pro se* status, however, and because he had subpoenaed four witnesses to testify about matters related to the state's alleged breach of the plea agreement, the superior court chose to entertain these extraneous issues.

Prior to the commencement of the hearing, the prosecutor asked the court to excuse one of Davidson's subpoenaed witnesses, Lieutenant Daniel Torres, because Torres did not know Davidson, had no personal knowledge of the relevant facts, and reported that he actually had to call Davidson into his office the day before the hearing simply to be able to identify him. See Tr. of Mot. Hearing at 3. Davidson alleged that Torres' testimony was crucial because Torres had signed a prison classification sheet which contained an erroneous handwritten summary of Davidson's convictions - which Davidson claimed constituted a breach of his plea agreement. Davidson also sought to elicit testimony from Torres that five months earlier, he had asked Torres to correct the erroneous notations, and that Torres had refused to do so. See id. at 4-8. The court granted the State's request to excuse Torres, reasoning that the content of the prison file would speak for itself and that Torres could offer no other meaningful testimony since he had no recollection of the events identified by Davidson. See id.

At the sentence reduction hearing, Cindy Belanger, the Administrator of Offender Records at the New Hampshire State Prison, testified that she made the erroneous handwritten notation describing the nature of Davidson's convictions in the

margin of a document in his prison record. This "shorthand" description mistakenly stated that Davidson had committed the offenses of conspiracy to commit kidnapping and attempted kidnapping with the purpose to murder (as was alleged in the dismissed Count I of each two-count indictment), rather than with the purpose to terrorize (as alleged in Count II of each indictment and agreed to in the plea agreement). While these notations served as a quick reference to the underlying charges, Belanger noted that the official documents remained in the record, and that her inaccurate shorthand notations did not result in any adverse consequences to Davidson. She testified that when she became aware of the erroneous notations, she immediately crossed out the inaccuracies, wrote "error" beside them, and wrote in the correct information. She added that Davidson's status as a medium-security inmate was not affected in any way by the clerical errors, noting more specifically that his privileges and access to educational and vocational opportunities, medical and mental health treatment, and other prison programs would not have been any different in the absence of the errors. See id. at 77-79. Finally, Belanger noted that she was the only person authorized to make corrections to an inmate's file, which was why Lieutenant Torres refused Davidson's

request that he make the changes himself. See id. at 74.

The court denied Davidson's motion for sentence reduction, denied his request for money damages without prejudice, and directed the state to submit additional pleadings discussing: (1) whether the state violated the plea agreement by releasing Davidson's statement to Chowanec's counsel; and (2) whether the Department of Corrections violated the plea agreement by inaccurately reflecting the convictions in Davidson's prison record. See id. at 114-120. The court then issued a written order denying Davidson's requests for injunctive relief except that the court ordered defendants to correct any prison records that inaccurately reflected Davidson's convictions. The court also made an express finding that Belanger's inaccurate notations "in no way affected the classification of the [Petitioner] or in any way limited his progress within the State Prison system." Order, November 15, 1996.

Pursuant to the court's order, the state filed a written pleading addressing the two issues identified above. Davidson responded by filing seven additional motions, including motions for contempt, motions to reverse for clear error, motions to subpoena evidence, and another motion for summary judgment. On April 17, 1997, the court issued a written order responding to

-10-

all pending motions. This order held that (1) the state did not violate the plea agreement by releasing Davidson's sworn statement, as the agreement did not require the state to obtain a judicial determination of the exculpatory nature of Davidson's statement before releasing it to Chowanec; and (2) even if the plea agreement required a judicial determination of the exculpatory nature of Davidson's statement, given that the court subsequently determined that the statement was "directly exculpatory" to co-defendant Chowanec, Davidson suffered no adverse consequences from its release. See Order, April 17, 1997.

The court also rejected Davidson's second claim that the state, through the probation office, violated the plea agreement by "reinstating" the dismissed charges. In denying this claim, the court held that the inaccurate notations in Davidson's prison file were made inadvertently and without bad faith on the part of any state actor, and caused Davidson no adverse consequences. Davidson's other motions were denied.

In June 1997, Davidson filed a notice of appeal with the New Hampshire Supreme Court raising 25 separate issues pertaining to the proceedings in the lower court. In the interim, on November 17, 1997, Davidson filed a petition for a writ of habeas corpus

with this court, claiming that the New Hampshire Supreme Court's five-month delay in ruling on his appeal demonstrated the unavailability or ineffectiveness of state corrective processes. Although the New Hampshire Supreme Court declined to accept Davidson's appeal on December 18, 1997, he failed to bring the declination order to my attention. Consequently, I denied his federal writ of habeas corpus for failing to exhaust state remedies on March 5, 1998. In light of the New Hampshire Supreme Court's December 18, 1997, declination order, however, the First Circuit Court of Appeals vacated my March 5, 1998, order on June 11, 1998, and remanded the case here for further proceedings.

## II. __STANDARD OF REVIEW__

Davidson filed his habeas corpus petition on November 19, 1997 - after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. He is therefore subject to AEDPA's amendments to the federal habeas statute, 28 U.S.C. § 2254. See Lindh v. Murphy, 521 U.S. 320 (1997). As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of
> a person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim
> that was adjudicated on the merits in State court

proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Additionally, 28 U.S.C. § 2254(e) states:

In a proceeding instituted by an application for a writ of habeas corpus. . . , a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Noting that "AEDPA is hardly a model of clarity," O'Brien v. Dubois, 145 F.3d 16, 20 (1st Cir. 1998), the First Circuit recently held that in assessing a Petitioner's claims, the federal habeas court must engage in an independent, two-step analysis. See id. at 24.

In the first step, the habeas court should determine whether the United States Supreme Court has "prescribed a rule that governs Davidson's claim." Id. If so, the court must evaluate whether the state court's decision is "contrary to" the Supreme Court's governing rule. "To obtain relief at this stage, a habeas petitioner must show that Supreme Court precedent requires an outcome contrary to that reached by the relevant state court."

-13-

Id. at 24-25. According to the First Circuit, in the first step of the analysis:

> the key inquiry, at bottom, is whether a Supreme Court rule - by virtue of its factual similarity (though not necessarily identicality) or its distillation of general federal law precepts into a channeled mode of analysis specifically intended for application to variant factual situations - can fairly be said to require a particular result in a particular case.

Id. at 25.

When no Supreme Court precedent is dispositive of the petitioner's claim, the habeas court must take the second step - determining "whether the state court's derivation of a case-specific rule from the Court's generally relevant jurisprudence appears objectively reasonable." Id. At this step, for the writ to issue, the petitioner bears the burden of showing that "the state court decision [is] so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." Id. A federal habeas court also must accept the state court's resolution of the factual issues unless the applicant for habeas relief can establish by clear and convincing evidence that the state court determined the facts incorrectly. See 28 U.S.C. § 2254(e)(1). I apply these standards in reviewing Davidson's petition for a writ of habeas corpus.

-14-

## III.  DISCUSSION

### A.  The Plea Agreement

Davidson alleges that the state breached the plea agreement (1) when the prosecution, via the probation officer, submitted a presentence investigation report ("PSI") recommending a higher sentence than the prosecutors agreed to recommend; (2) when the prosecution failed to obtain judicial confirmation of the exculpatory nature of Davidson's statement before disclosing it to his co-defendants; and (3) when the prosecution effectively reinstated charges which had been dismissed as part of the plea agreement, by forwarding copies of the dismissed charges to the prison where they were included in Davidson's file.  I discuss each claim in turn.

#### 1.  The PSI

Davidson concedes that the prosecutors fulfilled their obligation as set forth in the plea agreement to recommend a prison sentence totaling no less than 18 years and no more than 40 years.  Nevertheless, he argues that the probation officer violated the agreement by recommending a higher sentence.

Davidson's argument based on the PSI fails for several reasons.  First, he is barred from raising his claim in a federal habeas corpus petition because he failed to raise it during the

sentencing hearing.  This procedural default constitutes an "independent and adequate" state ground justifying the New Hampshire Supreme Court's decision to reject his appeal.  See New Hampshire v. Hogdon, 725 A2d 660, 662 (N.H. 1999) ("Any objection not raised at trial is deemed waived."); State v. Ryan, 607 A.2d 954, 955 (N.H. 1992) (same).  As Davidson has failed to allege any "cause and prejudice" that would excuse his default, he is barred from raising his claim in federal court.  See Stewart v. LaGrand, 119 S. Ct. 1018, 1019 (1999) (noting that a claim not raised in state court proceedings is procedurally defaulted from habeas review absent a showing of cause and prejudice, or a fundamental miscarriage of justice to excuse the default; Levasseur v. Pepe, 70 F.3d 187, 192 (1st Cir. 1995) ("[where a petitioner . . . has procedurally defaulted on his claim, we reach the merits on habeas corpus review only if the default can be excused by establishing either cause for the default and actual prejudice resulting therefrom, or that failure to consider the claim will result in a 'substantial miscarriage of justice'").

Davidson's claim also fails on its merits.  The probation officer has a duty under New Hampshire law to assist the court by making a sentencing recommendation.  N.H. Rev. Stat. Ann. §

651:4.  When a probation officer acts in this capacity, he is serving as an "officer of the court rather than as an agent of the prosecutor."  N.H. Rev. Stat. Ann. § 504-A:12 I.  Assuming for purposes of analysis that state prosecutors could bind the probation officer to a specific sentencing recommendation - a very doubtful proposition - the record in this case does not support Davidson's claim that the plea agreement imposed such a limitation on the probation officer.  The agreement does not mention the Department of Corrections, for whom the probation officer works, and Davidson has failed to identify any other evidence that would support a conclusion that the parties intended to limit the power of the probation officer to formulate his own independent sentencing recommendation.

Finally, even if the plea agreement could be construed to obligate the probation officer to recommend the sentence specified in the plea agreement, the probation officer's breach of the agreement was of no consequence to Davidson as the court disregarded the PSI recommendation and sentenced Davidson to a shorter prison term than both the probation officer and the state prosecutors recommended.

## 2. __Davidson's Statement__

Davidson next argues that the prosecutors breached the plea agreement by disclosing his statement to co-defendants without first obtaining a determination from the court that the statement was exculpatory.

The state superior court considered this argument and rejected it, finding that the plea agreement did not obligate the state to obtain a ruling that Davidson's statement was exculpatory before releasing it to his co-defendants. The court alternatively concluded that Davidson was not harmed by the prosecutor's failure to obtain judicial review of the statement before releasing it because the court later determined that the statement was exculpatory. As I concur with the state court's ruling on both points, I reject Davidson's claim.

## 3. __The Dismissed Charges__

Davidson also argues that the State violated his plea agreement by effectively reinstating the charges the state agreed to dismiss as a part of the plea agreement. He suggests that such reinstatement occurred when copies of the dismissed charges accidentally were sent to the New Hampshire State Prison and erroneous notations about his convictions were entered into his prison file. The state superior court determined that the state

did not violate the plea agreement by sending the dismissed charges to the prison because the charges were not actually "reinstated," and because the inclusion of those charges in Davidson's prison file was an administrative error which had no adverse impact on him. I agree with the state court's conclusions on these issues and, therefore, reject Davidson's claim.

B. **The Sentence Reduction Hearing**

Davidson argues that his right to due process was denied because of the way in which the proceedings on his motion for sentence reduction were conducted. Specifically, he complains that (1) he was denied transcripts and discovery prior to the hearing; (2) he was denied the right to call Lieutenant Torres as a witness during the hearing; (3) the prosecutors made a number of fraudulent representations during the hearing and engaged in other forms of misconduct; and (4) the court should have recused itself from presiding over the issue. I reject Davidson's due process claims both because he lacks a constitutionally protected liberty interest in obtaining a sentence reduction and because his claims are without factual support in the record.

-19-

## 1.    __Lack of a Protected Liberty Interest__

As the First Circuit Court of Appeals has recognized, "[a] viable procedural due process claim must demonstrate a deprivation by state action of a constitutionally protected interest in life, liberty, or property . . . without due process of law." Romero-Barcello v. Hernandez-Agosto, 75 F.3d 23, 32 (1st Cir. 1996) (internal quotation marks and citation omitted). In determining whether a state statute vests a prison inmate with a liberty interest protected by the due process clause, the court has stated that "[s]tate-created liberty interests 'will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Hamm v. Latessa, 72 F.3d 947, 954 (1st Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

Davidson based his motion for sentence reduction on N.H. Rev. Stat. Ann. § 651:20 which provides in pertinent part that

> Notwithstanding any other provision of law, except as provided in subparagraphs (a),(b), and (c), the sentence to imprisonment of any person may be suspended by the sentencing court at the time of imposition of the sentence or at any time thereafter in

> response to a petition to suspend sentence
> which is timely brought in accordance with
> the limitations set forth below in
> subparagraphs (a),(b), and (c).

The New Hampshire Supreme Court has determined that a trial court is never obligated to suspend a sentence pursuant to N.H. Rev. Stat. Ann. § 651:20. See State v. W.J.T. Enterprises, Inc., 136 N.H. 490, 496 (1992); State v. Gibbons, 135 N.H. 320, 322-23 (1992). Accordingly, the court has held both that a request to suspend a sentence may be denied without a hearing, see State v. Roy, 138 N.H. 97, 98 (1993), and that the sentence suspension statute does not give rise to a constitutionally protected liberty interest in obtaining a suspended sentence. See Gibbons, 135 N.H. at 322-23.

The Ninth Circuit Court of Appeals recently considered whether a federal statute granting the United States Bureau of Prisons the authority to suspend an inmate's sentence in certain circumstances gives rise to a constitutionally protected liberty interest. See Jacks v. Crabtree, 114 F.3d 983 (9th Cir. 1997), cert. denied, 118 S. Ct. 1196 (1998). The statute at issue in that case provides in pertinent part that

> The period a prisoner convicted of a non-
> violent offense remains in custody after
> successfully completing a treatment program
> may be reduced by the Bureau of Prisons, but

> such a reduction may not be more than one
> year . . . .

18 U.S.C. § 3621(e)(2)(B). Inmates who had completed treatment programs but who had been denied early release brought habeas corpus petitions alleging, among other things, that the Bureau of Prisons had denied them their right to due process by categorically ruling that they were ineligible for a sentence reduction. In rejecting this argument, the court concluded:

> We also reject petitioners' claim that section 3621(e)(2)(B) creates a due process liberty interest in the one-year sentence reduction. Not only is section 3621(e)(2)(B) written in nonmandatory language, but denial of the one-year reduction doesn't "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 472 U.S. at 484. In fact, denial merely means that the inmate will have to serve out his sentence as expected.

Id. at 986 n.4.

I agree with the New Hampshire Supreme Court and the Ninth Circuit that a discretionary sentence recommendation statute such as N.H. Rev. Stat. Ann. § 650:20 does not give rise to a constitutionally protected liberty interest in obtaining a sentence reduction because the denial of a request for sentence reduction does not "impose [] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

-22-

life." See Jacks, 114 F.3d at 986 n.4. Instead, the "denial [of a request for a sentence reduction] merely means that the inmate will have to serve out his sentence as expected." Id. Accordingly, I reject Davidson's habeas corpus claim to the extent that it is based on any alleged defects in the process he was accorded in connection with his motion for sentence reduction.

## 2. **Merits**

Even if I were to conclude that Davidson has a constitutionally protected liberty interest in having his sentence reduced, I would reject his due process claim because the state accorded him all of the process that he was due.

First, the record demonstrates that Davidson was given a full hearing on his motion and was allowed to present virtually all of the evidence he sought to introduce. The Superior Court issued subpoenas in accordance with Davidson's motions and all four of the individuals he subpoenaed appeared at the hearing. Three of his four witnesses were permitted to testify, and the fourth, Lieutenant Torres, was excluded only because he had no relevant evidence to provide. The prison file, which was the subject of an *ex parte* motion to subpoena evidence, and the court file, containing the original charging documents and waivers of

indictments, the terms of the plea agreement, the mittimuses, and the sentencing orders, were available for reference at the hearing. Finally, the State stipulated at the hearing that it had not moved to preclude discovery of Davidson's statement by counsel for co-defendant Chowanec - eliminating any potential dispute over that issue.

The only discovery information denied to Davidson was (1) statistical evidence for the preceding ten-year period on the number of sentences imposed by the superior court pursuant to guilty pleas that were later reduced, and the minimum and maximum sentences actually imposed for three specified statutory offenses, separated by gender; (2) copies of "all motions, objections, responses, and answers filed by the prosecution" during the course of Davidson's prosecution; and (3) all pleadings filed by the State Attorney General's Office in any case between 7/1/93 and 10/15/96 containing the words "work product" and discovery." These requests were clearly overbroad and unduly burdensome.

Davidson was able to garner the necessary information to meaningfully present his sentence reduction motion to the court, both through testimony and argument. See Ross V. Moffitt, 417 U.S. 600, 612 (1974)(noting that fundamental fairness entitles

indigent defendants to "an adequate opportunity to present their claims fairly within the adversary system"). He had access to the witnesses and physical evidence necessary to support his allegations. That is all that the constitution requires. See Ake v. Oklahoma, 470 U.S. 68, 76 (1985)(describing the due process guarantees that must be provided to an indigent defendant, including the provision of a trial transcript "if the transcript is necessary to a decision on the merits of the appeal")(citing Griffin v. Illinois, 351 U.S. 12 (1956)).

Davidson has also failed to demonstrate that the prosecutors made any fraudulent representations at the sentencing hearing or that they otherwise engaged in any misconduct. Finally, he has failed to identify any legally sufficient ground to support his claim that the state court judge was biased against him.

In summary, Davidson has failed to show that Supreme Court precedent "requires an outcome contrary to that reached by the relevant state court." O'Brien, 145 F.3d at 24-25. Given the strength of the evidence countering Davidson's argument that his due process right to "fundamental fairness" was violated by the way the superior court conducted his sentence reduction hearing, Davidson's claim for habeas corpus relief is denied.

## CONCLUSION

As I have found each of Davidson's allegations without merit, his request for habeas corpus relief is denied. I further conclude that Davidson has not made a substantial showing of the denial of a constitutional right. Accordingly, I decline to issue a certificate of appealability.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

April 28, 1999

cc:  Craig Davidson, pro se

-26-